[Crim. No. 3244.   First Dist., Div. Two.   Jan. 15, 1957.]

THE PEOPLE, Respondent, v. RAYMOND CLIFFORD HODGE, Appellant.

*Assigned by Chairman of Judicial Council.

Raymond C. Hodge, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

DRAPER, J. pro tem.*—Petitioner's application for writ of error *coram nobis* was denied by the trial court without hearing. Petitioner appeals. By his petition, appellant sought to withdraw his plea of guilty to the murder of Roy E. Kapphahn, and to set aside the judgment entered upon that plea.

Appellant's plea of guilty was entered and judgment pronounced November 2, 1953. No appeal was taken. His present application was not filed until March 12, 1956. ■ It is well settled that a petitioner in a *coram nobis* proceeding must allege facts showing diligence in discovering and presenting the facts upon which he relies for the writ. (*People* v. *Shorts,* 32 Cal.2d 502, 512 [197 P.2d 330]; *People* v. *Stonom,* 139 Cal.App.2d 408 [293 P.2d 807].) ■ Here all the facts alleged by petitioner were known to him at the time of plea. His only allegation to excuse his delay is that he formerly thought that habeas corpus was the proper remedy. He presented three applications for that writ to the Supreme Court of California, petitioned for rehearing upon denial of two of them, and petitioned the United States Supreme Court for certiorari after one such denial. He alleges that he has discovered that *coram nobis* is his proper remedy, and now seeks it. He does not allege the date or manner of such discovery. It seems clear that he has not met the burden of showing diligence. However, the course usually followed by appellate courts in such cases, particularly where the appellant acts as his own attorney, suggests review of the substance of appellant's allegations.

■ His principal complaint appears to be that the district attorney, by promises to recommend life imprisonment rather than the death penalty, induced the plea of guilty. But the district attorney did recommend the life sentence, and, more important to appellant, that is the sentence imposed by the court. He got precisely what he bargained for. It is a perversion of the rule of *People* v. *Gilbert,* 25 Cal.2d 422 [154 P.2d 657], to argue that the keeping of such a promise by the prosecutor vitiates the plea. Appellant's contention cannot be sustained. (See *In re Rogers,* 91 Cal.App.2d 394 [205 P.2d 667].)

■ Appellant also contends that the district attorney threatened to seek the death penalty if appellant refused to plead guilty. Of course, the filing of the complaint and information charging murder in the first degree carried with

*Assigned by Chairman of Judicial Council.

it the clearly implied threat of the death penalty. Assuming a direct threat by the prosecutor to seek the greater penalty, there is no proper ground for setting aside the plea. (*People* v. *Toledo*, 111 Cal.App. 204, where the court, at page 208 [295 P. 353], expresses "serious doubt as to whether a statement by a district attorney that he contemplates doing his duty, may ever be considered as duress.") Appellant also asserts that his court-appointed counsel held out to him the fear of the death penalty. But there is nothing to show that their apprehension was in any way unwarranted.

The petition also alleges that his attorneys failed to investigate the case and prepare his defense, urged him to plead guilty, and "threatened to quit the case" if he refused this advice. But there is nothing to indicate that their advice was not sound. Two attorneys were appointed to represent appellant both in the municipal and the superior court. The appointing judges believed them able, and the municipal judge spoke of the broad experience of the senior counsel appointed. There is no specification of any fact, favorable to appellant, which they failed to investigate. Appellant's assertion that their threat "to quit the case" was duress inducing him to plead guilty comes strangely from him. He devotes much of his brief to attacking their sincerity and devotion to his cause. If he is sincere in these attacks, he should have welcomed their alleged offer to drop the case, which would have left him free to seek other counsel of the court.

In any case, appellant failed to make any complaint to either trial court about his counsel. The senior attorney was appointed August 18, 1953. On August 21, after being interviewed by this attorney, appellant expressed in open court his acceptance of his services. Junior counsel was appointed August 21. From that time through pronouncement of judgment November 2, appellant expressed to the court no dissatisfaction with either, although he appeared in court with both on several occasions. When counsel moved to withdraw the plea of not guilty and enter a guilty plea, the court asked appellant whether he had had the advice of counsel, and whether he was "thoroughly aware of what the request means and what the purpose of it is." Appellant answered "yes" to both questions. Appellant personally joined in the waiver of time for imposition of sentence, and upon arraignment for judgment personally answered "no" to the question whether he had any legal cause to show why judgment should not be pronounced against him. His present complaints as to his

representation are without merit. ■ Further, "the claim of lack of effective aid of counsel cannot be asserted in a *coram nobis* proceeding." (*People* v. *Fritz,* 140 Cal.App.2d 618, 622 [295 P.2d 449].)

■ Appellant complains that he was placed in San Quentin Prison upon his arrival in Marin County after arrest in Oregon. He says he was placed in "Isolation Row" which, he asserts, is "in very close proximity to Death Row," and that he was, "at times, in direct contact with condemned prisoners." This, he asserts, was duress which contributed to his admission of his guilt. Of course, one can conceive of circumstances under which exhibition of the execution chamber, or exposure to or contact with those condemned to death, would constitute a most brutal form of duress. Such a situation is not shown by the application here. The allegations of the petition are, in this respect, vague and unconvincing. They show no treatment of appellant different from that accorded persons believed to be somewhat more than normal security risks.

■ Under statutory provision, the sheriff may remove a prisoner to a California state prison "for safekeeping" whenever there is reasonable ground to believe that he "may be forcibly removed" from the county jail. This statute makes it the duty of the warden to "accept and detain such prisoner in his custody until his removal is ordered by the superior court of the county from which he was delivered." (Pen. Code, § 4007.) The petition here makes no showing whatever that this code section was not fully complied with in the case at bar.

The attorney general, in a supplemental brief, has set forth a letter written by the sheriff to the warden at San Quentin, asking that appellant be detained there pursuant to the foregoing code section. This letter is not a part of the record before us. We refer to it only because appellant, in his reply to the supplemental brief, relies upon the letter to show a failure of compliance with Penal Code, section 4007. He argues that the code section requires a court order for such transfer. In this he is mistaken, as is clear from the language of the section.

■ In any event, there are before us two orders of the superior court, made the day after appellant's transfer to the prison, which recognize that he is detained at that prison, and which order the warden and the sheriff to deliver him to the municipal or superior court as required for steps in his

trial. Both orders specifically direct his return to the prison after each such appearance. Thus his detention at San Quentin was properly authorized.

Most of the claims previously reviewed are based upon facts well known to appellant before judgment was pronounced, but not brought to the attention of the trial court, and thus not proper bases for a proceeding in *coram nobis*. (*People* v. *Adamson,* 34 Cal.2d 320 [210 P.2d 13] ; *People* v. *Fritz, supra,* 140 Cal.App.2d 618.)

Appellant also asserts that testimony of his accomplice at the preliminary hearing was false. He relies on the affidavit of a fellow prisoner that the accomplice has admitted such falsity. This affidavit is, of course, inadmissible hearsay.

Still further, *coram nobis* is not the proper proceeding to raise such an issue. (*People* v. *Adamson, supra.*)

The petition showed no sound ground for relief. Judgment affirmed.

Dooling, Acting P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied February 14, 1957, and appellant's petition for a hearing by the Supreme Court was denied March 13, 1957.