321 P.2d 599

STATE of Idaho, Plaintiff-Respondent,

v.

Floyd JOHNSON, Defendant-Appellant.
Application of Floyd JOHNSON for Writ
of Review Coram Nobis.

STATE of Idaho ex rel. Harold S. FOR-
BUSH, Prosecuting Attorney of Teton
County, State of Idaho, Petitioner,

v.

Preston THATCHER, District Judge of the
Sixth Judicial District of the State of
Idaho, in and for the County of Bingham,
Respondent.

Nos. 8202, 8570, 8574.

Supreme Court of Idaho.

Feb. 6, 1958.

488

Vernon K. Smith, James W. Blaine, Boise, for appellant Floyd Johnson and respondent Thatcher.

Graydon W. Smith, Atty. Gen., J. R. Smead, T. J. Jones, III, Asst. Attys. Gen., Harold Forbush, Prosecuting Atty., Driggs, for respondent, and petitioner State of Idaho.

TAYLOR, Justice.

Defendant was convicted of burglary of the first degree February 20, 1954. The trial was had in Bingham County in the Sixth Judicial District, on a change of venue from Teton County in the Ninth Judicial District, where the information was filed. After defendant's motion for a new trial was denied, judgment was entered May 12, 1954, that defendant be imprisoned in the state penitentiary for a period of not more than 15 years. Defendant appealed to this court from the order denying a new trial and from the judgment of conviction.

The judgment was here affirmed June 29, 1955, and rehearing denied September 16, 1955. State v. Johnson, 77 Idaho 1, 287 P.2d 425, 51 A.L.R.2d 1386. Thereafter, Johnson sought a review by the Supreme Court of the United States, which was denied April 2, 1956. Johnson v. State, 350 U.S. 1007, 76 S.Ct. 649, 100 L.Ed 869. Remittitur went down from this court to the district court May 20, 1956.

Thereafter, defendant made application to the district court for probation and, the district court having entertained the application and fixed a date for the hearing thereof, the prosecuting attorney upon original proceedings had in this court procured a peremptory writ of prohibition April 16, 1957, prohibiting the district judge from assuming or exercising jurisdiction in the matter of the defendant's application for probation. Forbush v. Thatcher, 78 Idaho 597, 309 P.2d 203.

May 15, 1957, defendant filed a petition in the District Court of the Sixth Judicial District in and for Bingham County, praying from that court an order to show cause, directing the prosecuting attorney of Teton County in the Ninth Judicial District to show cause why the judgment

of conviction should not be vacated and a new trial granted. Petitioner also prayed that execution of the judgment of conviction be stayed pending determination thereof. The district judge of the Sixth District on May 15, 1957, entered an order dismissing the petition for writ of review coram nobis, issued a certificate of probable cause for appeal and admitted defendant to bail pending such appeal. On the same day defendant filed notice of appeal to this court from the order dismissing his petition for writ of review coram nobis.

May 31, 1957, the prosecuting attorney of Teton County filed a petition in this court asking issuance of an alternative writ of mandate commanding the district judge immediately to commit the defendant to the penitentiary pursuant to the judgment previously entered. The petition is based upon the same ground as that previously asserted by the prosecuting attorney in his petition for writ of prohibition, to-wit: that the district judge had no jurisdiction to permit the filing of, or to act upon the petition for, writ of review coram nobis, and upon the further ground that the writ of review coram nobis is not recognized in this jurisdiction—citing State v. Iverson, Idaho, 79 Idaho 25, 310 P.2d 803. Answer on behalf of the district judge has been filed by counsel for defendant Johnson, and the issue is joined.

August 6, 1957, the state filed its motion to dismiss defendant's appeal from the order of the district court dismissing his petition for writ of review coram nobis. August 21, 1957, the defendant filed in this court a motion for an order recalling the remittitur heretofore issued in State v. Johnson.

The petition for writ of review coram nobis, the answer to the petition for writ of mandate, and the motion for an order recalling the remittitur, are all based upon the same ground, namely: that defendant's conviction was the result of error in fact. Since all these pending causes arise out of and depend upon this one issue, they have been consolidated for hearing and disposition.

The background facts are as follows:

The state's contention, which is borne out by the convictions affirmed by this court (State v. Fedder, 76 Idaho 535, 285 P.2d 802; State v. Johnson, 77 Idaho 1, 287 P.2d 425, 51 A.L.R.2d 1386), is that Donald Lee Fedder and Floyd Johnson, the defendant herein, in the early morning of December 29, 1952, went together in the same car to the Tetonia Club in Tetonia, broke into the club and stole therefrom certain slot machines, which they together loaded into the car (a station wagon). From there, Johnson driving, the two proceeded south toward Driggs. At the city limits they were hailed by the sheriff and city marshal, and stopped by a gun blast by the marshal, which flattened the right front tire. The car came to rest against a cement culvert abutment. The impact and weight of the slot machines on

the floor of the station wagon drove the seat forward so that Fedder was pinned in the car, unable to get out. Johnson escaped and was tracked through the freshly fallen snow. He eluded the officers by commingling his tracks with other traffic in the village of Driggs and also by climbing along the top of a fence to a barn, where he hid during the day time. After nightfall he proceeded south toward Victor and was apprehended in an open field near the highway. He later showed the sheriff where he had hidden during the day and explained how he had avoided being tracked to the barn. These same and other facts are detailed in State v. Fedder and State v. Johnson, supra.

Upon his trial Johnson's defense was that he had gone to Driggs to visit relatives. The house being dark he was sitting in a car nearby when he heard the shots from the officers' guns. Having previously been convicted of felonies, he became apprehensive lest he be sought and questioned. For that reason he attempted to elude the officers and flee the community. Some of the tracks followed by the officers were made by him in his attempt to avoid them. A third party named "George" had accompanied Fedder to the Tetonia Club and was the party who had escaped from the car after it hit the abutment. The station wagon used in the burglary belonged to defendant Johnson's mother. Johnson explained that he had loaned the car to Fedder. After Fedder and another party,

presumably "George", had gone toward Tetonia on an errand which did not concern Johnson, Fedder was to return to Driggs and pick up Johnson.

Fedder was tried first. Fedder, as a witness on his own behalf, under oath, testified:

"* * * and I left and went back down to Idaho Falls and picked up Floyd Johnson, that is my partner, and we went back up to Tetonia, and this fellow had told me that he would be there, and if he wasn't there that the door would be unlocked; so when me and Floyd went up there it was blizzarding, and so we parked our car across the street, and walked over, and he wasn't there, but the door was unlocked; so we just went in and picked up our four machines and went down the highway until we ran into the road block, and the sheriff shot the tires off."

After his conviction and upon his release from the Teton County jail, presumably when on bail pending his appeal to this court, Fedder was interviewed by one of Johnson's counsel. The attorney made notes of the interview from which it appears that Fedder told counsel he had met a man whom he knew only as "George". "George" knew one of the partners in the Tetonia Club, who would assist "George" in stealing the slot machines from the other partner and that "George" would sell the machines

to Fedder, and that it was "George" who went with him and assisted in taking the machines from the club, and that it was "George" who had escaped from the car after it had hit the cement abutment.

Fedder's testimony above quoted is brought to our attention in this case by the affidavit of the attorney for Johnson who interviewed Fedder. Counsel avers in part: "That upon the trial of the case your affiant was aware * * * of the testimony the said Donald Lee Fedder had given in the previous case of the State of Idaho vs. Donald Lee Fedder; that your affiant expected the said Donald Lee Fedder to testify to the same effect as he did in his own defense in the previous case, in which event your affiant was prepared to impeach such testimony, or to testify in accordance with the statement given your affiant".

Upon Johnson's trial, which occurred in February, 1954, Fedder was called as a witness by the state and testified as follows:

"Q. Will you state your name, please? A. Donald Fedder.

"Q. And where do you live, Mr. Fedder? A. Blackfoot, Idaho.

"Q. Mr. Fedder, directing your attention to the night of December 29th, 1952, did you on that evening have occasion to be in Tetonia, Idaho? A. I have a statement here, to read * * * I claim the privilege of not testifying in this case on the ground it may tend to incriminate me under Article I, Section 13 of the Idaho Constitution and the 5th Amendment to the United States Constitution; on the advice of my attorney, John R. Black, Pocatello, Idaho.

"Mr. Sharp: Well, we will let the Court rule on that.

"The Court: Your other case is on appeal? A. (witness) Yes.

"The Court: I will rule that the witness does not have to answer.

"Mr. Sharp: Thank you, Mr. Fedder.

"Mr. Blaine: We will want Mr. Fedder to stay here, I will want to call him as a witness myself, I believe.

"The Court: Yes, all witnesses will remain unless excused by the Court."

Fedder was again called to the witness stand by defendant Johnson and testified as follows:

"Q. Your name is Donald Lee Fedder?

"A. Yes.

"Q. And you previously have been sworn to testify in this case?

'A. Yes I have.

"Q. Where is your home?

"A. In Blackfoot.

"Q. And calling your attention to December 28th, and the morning of

December 29th, would you please state whether or not you were in Driggs, or in the vicinity of Driggs, Idaho?

"A. I have a statement here I wish to read * * * the same as I read before * * * I claim the privilege of not testifying in this case on the grounds it may tend to incriminate me under Article I, Section 13 of the Idaho Constitution, and the 5th Amendment to the United States Constitution, on the advice of my attorney, John R. Black, Pocatello, Idaho.

"The Court: Gentlemen, I think this witness is entitled to the privilege. He may be excused."

The ruling of the court permitting Fedder to refuse to testify was assigned as error on Johnson's appeal, and this court upheld the ruling of the trial court. State v. Johnson, supra. This same ruling was also made the basis of Johnson's petition for writ of certiorari filed in the Supreme Court of the United States.

Asserting it to be an error of fact, Johnson again makes the ruling the basis of his application for a writ of review coram nobis, and of his answer to the petition for writ of mandate and of his motion for an order recalling remittitur.

The holding of this court that the ruling was not reversible error is rendered less subject to question by the facts now appearing in the record before us. In a strict sense the question by the state as to whether the witness Fedder was in Tetonia on the night of the burglary and the question by defense counsel as to whether he was in Driggs or in the vicinity of Driggs that morning, would require an answer which if affirmative would place Fedder at the place where the crime was committed, or at the place where the fleeing perpetrators were apprehended. That fact might be an essential link in the chain of evidence necessary to a conviction. U. S. v. Burr, 25 Fed.Cas. page 38 No. 14692e; Ex parte Irvine, C.C., 74 F. 954. Johnson contends that an answer to the specific question put by his counsel, as to whether on that night Fedder was in Driggs or vicinity, could not possibly incriminate the witness, and cites Ex parte Bommarito, 270 Mich. 455, 259 N.W. 310. In that case witness claimed the privilege on being asked whether on a certain day he was in Detroit. The court in holding against the claim of privilege called attention to the fact that Detroit was the fourth city of the nation in population. Driggs is a small community where a stranger's presence is immediately noted.

However, assuming for the present purpose that an answer to the question would not have tended to incriminate the witness, the answer would have availed Johnson nothing. An answer to the specific question was not what Johnson sought. In the showing now made Johnson states that in response to further questions Fedder would have either testified that Johnson was, or was not, with him, and did, or did

not, participate in the burglary. If he testified as he did at his own trial, then Johnson would have impeached him by the testimony of Johnson's counsel, to whom it is claimed Fedder made contradictory statements. If he testified that Johnson did not participate, such testimony would exculpate Johnson.

But it is clear that such testimony was privileged. Ex parte Clarke, 103 Cal. 352, 37 P. 230; Miskimins v. Shaver, 8 Wyo. 392, 58 P. 411, 49 L.R.A. 831; Ex parte Berman, 105 Cal.App. 37, 287 P. 125. If Fedder testified contrary to the testimony he gave at his own trial, he would have exposed himself to a charge of perjury. His statement on the stand makes plain his intention to claim the privilege as to further testimony. Where self-incrimination depends upon the purport of the answer, it is for the witness to decide whether to answer or claim the privilege. In re Jennings, 154 Or. 482, 59 P.2d 702. Fedder was entitled to claim the privilege and Johnson cannot complain.

It is also clear that if Fedder had testified Johnson did not participate, the state would have impeached him by his former testimony.

Moreover, counsel for Johnson made no further effort to pursue the interrogation nor to show to the court that the claim of immunity was not valid, but expressed satisfaction with the ruling of the court. If Fedder's testimony was important to the defense and if defense counsel seriously entertained the right to produce it, they had a duty to assist the trial court to a correct ruling by a showing in that regard. See: Moore v. Backus, 7 Cir., 78 F.2d 571, 101 A.L.R. 379, annotation 389.

In support of his petition for writ of review coram nobis, defendant attacks the ruling of this court in State v. Iverson, Idaho, 310 P.2d 803, to the effect that the field contemplated by the writ has been pre-empted by the legislature, and that this court has no further jurisdiction after remittitur. His argument is that the legislative provisions for commutation of sentences, paroles and pardons is not a remedy for one who has been convicted through error of fact, because even though pardoned he still bears the stigma of conviction. We recognize the merit of this reasoning. However, we need not, and do not, pursue the matter further because a determination of that issue is not necessary to a decision herein.

As pointed out above, the testimony sought from Fedder was clearly privileged and he expressly claimed the privilege. The result is that the refusal of the trial court to require him to answer the specific question asked, did not prejudice this defendant. The testimony sought would not have exculpated him. There is no showing of error of fact. 24 C.J.S. Criminal Law § 1606 b.(4); People v. Blair, 146 Cal.App.2d 299, 303 P.2d 597; People v. Hodge, 147 Cal.App.2d 591, 305 P.2d 957. As to the alleged error again complained of, Johnson has had his remedy by mo-

tion for new trial and appeal. People v. Knight, 73 Cal.App.2d 532, 166 P.2d 899; People v. Campbell, 111 Cal.App.2d 824, 245 P.2d 311; People v. Mendez, 144 Cal. App.2d 500, 301 P.2d 295.

The motion of the state to dismiss the appeal from the order dismissing the petition for writ of review coram nobis is denied.

The order of the trial court dismissing the petition for writ of review coram nobis is affirmed.

Defendant's motion for an order recalling the remittitur is denied.

In his return to the alternative writ of mandate and in his answer to the petition therefor, the respondent district judge denies that he refused to order the defendant committed to the penitentiary pursuant to the original judgment, and asserts that he stayed the execution of the judgment, issued the certificate of probable cause for appeal and admitted the defendant to bail pending appeal, because in his judgment there was legal ground for such proceeding, and that the proposed appeal had merit. He also shows that upon final determination of the cause herein, he stands ready and willing to execute an order of commitment as required by law. In view of this showing, the alternative writ heretofore issued is quashed and peremptory writ of mandate is denied.

KEETON, C. J., and PORTER, SMITH and McQUADE, JJ., concur.