Filed 4/18/18

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| TIKISHA MARIE UPSHAW,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>     Respondent;<br><br>THE PEOPLE et al.,<br><br>     Real Parties in Interest. | A152141<br><br>(Alameda County<br>Super. Ct. No. 468261) |


Petitioner Tikisha Marie Upshaw is incarcerated at Santa Rita Jail (SRJ) in Alameda County, awaiting trial for, among other things, special circumstance murder. By petition of writ of mandate, Upshaw challenges a trial court order denying her motion for a transfer from SRJ to a jail in a contiguous county. We deny the petition. In this case of first impression, we conclude Penal Code section 4007 authorizes a trial court to transfer a prisoner in a county jail to another jail in a contiguous county upon a sufficient evidentiary showing the current jail is unsafe for confinement, but that Upshaw is not entitled to writ relief because she failed to exhaust administrative remedies before filing the motion for transfer.[1]

---

[1] Undesignated statutory references are to the Penal Code.

1

FACTUAL AND PROCEDURAL BACKGROUND

The prosecution charged Upshaw with special circumstance murder (§§ 187, subd. (a), 190.2, subd. (a)(1)) and other crimes. The prosecution charged one of Upshaw's co-defendants, Chariott Louise Burks, with first degree murder (§ 187, subd. (a)) and shooting at an occupied motor vehicle (§ 246). In July 2016, Burks was arrested and booked into custody at SRJ. Approximately five months later, Upshaw was arrested and booked into custody at SRJ. When Upshaw was arrested, SRJ was the only county detention facility in Alameda County for female inmates.[2] Upshaw and Burks are housed in Housing Unit 21 (unit 21), which consists of multiple pods of inmate cells. Upshaw and Burks must be housed in unit 21 because of their gender and "maximum security" classification. There is a "keep separate order" for Burks and Upshaw.

*Upshaw's Transfer Motion*

In February 2017, Upshaw moved for transfer to a jail in a contiguous county pursuant to sections 4004, 4007, and 4029. Upshaw argued there was good cause for the transfer because: (1) SRJ could not offer her access to rehabilitative programs provided to similarly situated male inmates; (2) her personal safety was at risk; and (3) SRJ could not provide her with adequate access to counsel. In a supporting declaration, Upshaw's attorney, Brian Ford, averred the keep separate order precluded Upshaw from participating in work and rehabilitative programs. Ford stated that in early February 2017, he told a sheriff's deputy about Upshaw's "inability to participate in work or rehabilitative programs due to Burks being housed in the same pod" and the deputy agreed to "look into options of changing Upshaw's housing in order to get her access to programs." Around that same time, Upshaw told co-counsel "she had requested a housing reclassification" to enable her to participate in rehabilitative programs.

_____

[2] Although we do not rely on this statement because it is not part of the record before us, we note that at oral argument, counsel for the Alameda County Sheriff's Office (Sheriff) stated another housing unit is now available for maximum security female inmates.

2

Ford also stated that in mid-February, he attempted, unsuccessfully, to follow up on these programmatic concerns with the sheriff's deputy; he also contacted "inmate services" and "classifications" at SRJ regarding the housing request.[3] According to Ford, "[t]he failure of a person at [SRJ] to answer the phone has been a constant frustration to counsel attempting to find a resolution to Upshaw's housing crisis." Ford also chronicled his efforts to "interview and provide counsel to Upshaw." For example, in early January 2017, Ford "began making efforts" to visit Upshaw, but because of "onerous" security measures and insufficient visitation "time slots," he could not visit Upshaw until February 6, 2017. According to Ford, "[s]uch delays are unusual . . . in other county jails."

Next, Ford's declaration described three incidents he claimed caused Upshaw to "fear[ ] for her safety." During a February 6, 2017 visit with Ford's co-counsel, Upshaw "reported receiving significant animosity from other inmates" after she requested a housing reclassification. During a February 15, 2017 visit, Upshaw told Ford about "two separate incidents where the threatening actions of other inmates . . . caused [her] to fear for her personal safety. Both incidents involved different inmates," who "acted with continuous animus or hostility towards Upshaw. In the first incident, the other inmate confronted Upshaw in a loud, threatening, and unprovoked manner in the dining hall. Specifically, the other inmate raised from her seat upon seeing Upshaw and yelled, 'I'm gonna pull your ho card!' . . . In the second incident, the other inmate yelled at Upshaw and attempted to assault her while they were watching TV in the common area of Upshaw's pod. This attack was also unprovoked. Thus, Upshaw's safety has been imperiled both in the common area" of unit 21 and in "her own pod."

The prosecutor did not oppose Upshaw's transfer motion, and "submit[ted] to the Court's discretion." At an April 3, 2017 hearing, the court granted the transfer motion, and ordered Upshaw transferred from SRJ to San Francisco County Jail.

---

[3] At oral argument, Ford acknowledged the record does not establish he discussed Upshaw's safety concerns with the Sheriff.

3

*Sheriff's Reconsideration Motion*

The Sheriff moved for reconsideration, arguing it did not have notice of the motion or an opportunity to be heard. The Sheriff urged the court to deny Upshaw's motion to transfer. According to the Sheriff, section 4004 allows a prisoner to attend activities outside a detention facility, but does not authorize the transfer of a prisoner *between* detention facilities. Next, the Sheriff argued section 4007 did not authorize Upshaw's transfer absent a finding SRJ "is 'unfit or unsafe for the confinement of prisoners,' " and Upshaw had proffered no evidence SRJ is unfit or unsafe for prisoners. Third, the Sheriff claimed section 4029, which concerns equal treatment of prisoners of each sex in county detention facilities, did not authorize a transfer.

Next, the Sheriff argued that even if the court had authority to transfer Upshaw, she had not demonstrated good cause. As the Sheriff explained, a transfer order is granted only in "exceptional" circumstances and Upshaw's allegations—unsupported by competent evidence—did not provide good cause for "exceptional relief." The Sheriff claimed Upshaw's contention regarding her personal safety did "not provide good cause for taking the rare and exceptional step of ordering her transfer" because there was no evidence the interactions actually occurred, and because Upshaw had never notified SRJ of the "alleged threats, despite being aware of the procedures for doing so." Finally, the Sheriff disputed Upshaw's claim that she was denied access to rehabilitative programs and to counsel.

In a supporting declaration, SRJ's Detention and Corrections Administration Captain, Tara Russell, described unit 21 and the rehabilitative programs offered to SRJ inmates. According to Russell: (1) there are no special restrictions on Upshaw's movement at SRJ, and she and Burks have "equal access to recreation, dining, showers and phones. SRJ staff only ensures that Upshaw and Burks do not have any contact with each other"; (2) male and female inmates at SRJ have access to facilities, programs, and services of equal quality; (3) Burks has not received priority enrollment over Upshaw for SRJ courses; and (4) Upshaw declined to request enrollment in a program for anger management and substance abuse; and she was ineligible for the secondary education

4

program and work crew. Russell also described the policies and procedures for visits with counsel, and averred such visits were available to Ford on January 31, February 1, February 2, and February 3, 2017.

Next, Russell averred "SRJ records do not reflect any reports from Upshaw that she was threatened or called names by other inmates." Upshaw had submitted four grievances, none of which concerned "the matters raised in her motion." When the Sheriff asked Upshaw about "the threat[en]ing actions" described in the motion to transfer and asked whether Upshaw felt she needed to be housed in a different location based on her fear for her safety, Upshaw refused to answer without consulting her attorney. According to Russell, SRJ has specific procedures to ensure Upshaw's safety, which are described in the Inmate Rules and Regulation booklet inmates receive when booked into SRJ. Russell also averred the Sheriff routinely accommodates the housing needs of inmates who can have no contact with other inmates, that the Sheriff had accommodated Upshaw "to date," and that there was "no impediment" to accommodating her "going forward." Finally, Russell noted the additional costs associated with transporting Upshaw between San Francisco and Alameda County "each court day throughout the criminal proceedings, including trial," could exceed tens of thousands of dollars.

In opposition, Upshaw reiterated her entitlement to a transfer, and provided additional examples of threats to her personal safety. In a second supporting declaration, Ford described an April 3, 2017 incident where Upshaw was in an area with several other inmates, including Burks. Without provocation, a "large" inmate who was speaking with Burks "called Upshaw a 'snitch.' The inmate then began to yell out details about Upshaw's case [and] continued to loudly accuse Upshaw of being a 'snitch.' The inmate then turned and tried to start a physical fight with Upshaw, but she was restrained." Ford also noted an incident on April 25, 2017, where the same inmate insulted Upshaw and "stated loudly to the other inmates that Upshaw was 'going to Ad-seg' and accused Upshaw of being 'a snitch.' " Ford noted Upshaw would not offer evidence to the government for prosecutorial purposes, and she had not complained about fellow

5

inmates, or about violations of the keep separate order, "for fear of her being falsely labelled a 'snitch.' " Ford averred the Sheriff's attempts to interview Upshaw had increased inmates' hostilities toward her.

At a May 5, 2017 hearing, the court granted reconsideration and set aside its initial order granting Upshaw's transfer motion. The court determined section 4007 referred to " 'prisoners,' in plural" and that the statute contemplated a situation where "conditions in the jail become unfit or unsafe for prisoners." The court observed there were "sufficient grounds for believing that Ms. Upshaw's safety might be at risk" and that Upshaw had "made a good case for her safety," but ultimately concluded Upshaw could not "individually" petition for a transfer based on a threat to personal safety. In the alternative, the court assumed it had jurisdiction to transfer Upshaw, and concluded neither the alleged lack of programs at SRJ, nor counsel's inconvenience in scheduling visits at SRJ, were relevant to the transfer issue and, in any event, did not establish good cause for a transfer.

Following the court's ruling, Upshaw sought writ relief in this court.[4] Upshaw requests this court order the trial court to transfer her from SRJ to a county detention

---

[4] The present writ proceeding is Upshaw's fourth attempt to obtain writ relief from this court. Her first petition (case No. A151590) sought emergency relief, yet was filed approximately six weeks after the trial court's ruling. We denied that petition due to Upshaw's failure to provide an adequate record (*Sherwood v. Superior* Court (1979) 24 Cal.3d 183, 186–187; Cal. Rules of Court, rule 8.486(b)), and also noted any refiled petition must include a factual statement with citations to the record (Cal. Rules of Court, rules 8.485(a), 8.204(a)(1)(C) & (2)(C)) and descriptive electronic bookmarks pursuant to this court's local rules (Ct. App., First Dist., Local Rules of Ct., rule 16, Electronic filing, as amended May 1, 2015). Upshaw's second petition (case No. A151714) was denied due to her failure to cure all deficiencies identified in the order denying the prior petition. Even though our order denying the petition in case No. A151714 included a detailed list of necessary record material, Upshaw's third petition (case No. A151807) was submitted without many of those record items or an explanation for their absence; for that reason (and others explained in our denial order), the third petition was denied. Upon Upshaw's filing of this fourth—and procedurally adequate—writ petition, we retained the petition for consideration. We detail this somewhat tortured history of Upshaw's prior filings to emphasize that it is a writ petitioner's burden to present a procedurally and substantively

6

facility in a contiguous county.  We issued an order to show cause why the requested relief should not be granted, and requested that the parties discuss various issues, including whether Upshaw's failure to file any inmate grievances concerning the conditions of confinement barred her from seeking relief.

DISCUSSION

A trial court's authority to transfer a prisoner in a county detention facility is derived from statute.  (See, e.g., *Swarthout v. Superior Court* (2012) 208 Cal.App.4th 701, 706–707; *Payne v. Superior Court* (1976) 17 Cal.3d 908, 924–925.)  Resolution of the issues in this writ proceeding turns on the interpretation of sections 4004 and 4007. Our review is de novo.  The California Supreme Court has "recognized that the language used in a statute . . . should be given its ordinary meaning, and '[i]f the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' " (*People v. Valencia* (2017) 3 Cal.5th 347, 357– 358.)  "If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history." (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106–1107.)  In addition, " '[t]he words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.' [Citation.] 'Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.' " (*Valencia,* at pp. 357–358.)

I.

*Section 4004 Does Not Authorize the Transfer of a Prisoner Between County Jails*

Section 4004 provides in relevant part:  "A prisoner committed to the county jail for examination, or upon conviction for a public offense, must be actually confined in the

---

adequate writ petition, and Upshaw's repeated failure to do so has necessarily delayed resolution of her claims.

jail until legally discharged; and if the prisoner is permitted to go at large out of the jail, except by virtue of a legal order or process, it is an escape; provided, however, that during the pendency of a criminal proceeding, the court before which said proceeding is pending may make a legal order, good cause appearing therefor, for the removal of the prisoner from the county jail in custody of the sheriff. . . . The superior court of the county may make a legal order, good cause appearing therefor, for the removal of prisoners confined in the county jail, after conviction, in the custody of the sheriff. [¶] If facilities are no longer available in the county jail due to crowded conditions, a sheriff may transfer a person committed to the county jail upon conviction for a public offense to facilities which are available in the city jail . . . ." (§ 4004.)[5]

Upshaw claims section 4004 allows a trial court to transfer a prisoner between county detention facilities where the prisoner demonstrates good cause. We disagree. Section 4004 defines escape, which occurs where a prisoner goes "at large out of the jail." Section 4004 then defines the circumstances under which a prisoner's "at large" departure from a jail is not an escape, i.e. when the court makes a "legal order, good cause appearing therefor, for the removal of the prisoner from the county jail in custody of the sheriff." The statute does not discuss whether—or under what circumstances other than overcrowding—a court may *transfer* a prisoner between detention facilities. Here, Upshaw does not seek authorization to go "at large"—i.e. "free" or "unrestrained"—from SRJ; instead, she seeks a transfer from SRJ to another county detention facility. (Black's

---

[5] Section 4004 is derived from former section 32, which defined "escape" and outlined a sheriff or jailor's criminal liability for allowing such an escape. (Stats. 1851, ch. 23, § 32, p. 194.) In 1931, the Legislature enacted former section 1600, which is identical to the first paragraph of section 4004. (Stats. 1931, ch. 121, § 1, p. 167.) In 1941, the legislature added Part III to the Penal Code, to concentrate "all of the law relating to prisons [and] prisoners." (Seibert L. Sefton, *Code Sections on State Prisons and County Jails Revised and Codified* (1941) 16 State Bar J. 274–275.) In doing so, the legislature replaced former 1600 with section 4004. (Stats. 1941, ch. 106, pp. 1080, 1119.) The "legislative concern" in enacting section 4004 was "to reduce the risk of escape from county jails." (57 Ops.Cal.Atty.Gen. 276, 279, 280 (1974).) In 1984, the Legislature added the second paragraph, regarding jail overcrowding, to section 4004. (Stats. 1984, ch. 388, § 1, p. 1728.)

Law Dict. (5th ed. 1979) p. 114.)  The plain language of section 4004 does not authorize such a transfer, and we decline to rewrite the statute to provide that authority.  "It is not our role to rewrite statutes, especially criminal statutes." (*People v. White* (2017) 2 Cal.5th 349, 371.)

The few cases analyzing section 4004 arise out of a defendant's request for temporary release from jail in the custody of the sheriff, for good cause.  (See 3 Witkin, Cal. Crim. Law (4th ed. 2012) Punishment, § 21, p. 69; *Block v. Superior Court* (1998) 62 Cal.App.4th 363.)  For example, in *Block*, an actor requested a two-day release from county jail to complete post-production work on a movie.  (*Block*, at pp. 367–368, 371–372.)  The *Block* court determined the actor had not demonstrated good cause for the release, in part because "there was no emergency or exigent circumstances"—instead, the actor simply wanted to honor his "current contractual obligations, and to make himself employable in the future." (*Id.* at p. 371, fn. omitted.)  *Block* suggested section 4004 would authorize releases "of short duration," including "compassionate releases" to "attend a funeral of a loved one." (*Id.* at pp. 369, 370.)

Other cases have similarly construed section 4004 (or its predecessor statute) to authorize a prisoner's temporary release from custody.  (See *Pedersen v. Superior Court* (1906) 149 Cal. 389, 390 [considering whether convicted attorney could leave county jail to represent a client]; *Hicks v. Folks* (1893) 97 Cal. 241, 243 [considering predecessor statute in the context of inmate work programs]; 28 Ops.Cal.Atty.Gen. 60–61 (1956) [section 4004 authorizes release of a prisoner to testify as a witness in a criminal proceeding]; cf. *Lisenba v. California* (1941) 314 U.S. 219, 235 & fn. 12 (*Lisenba*) [section 4004 did not authorize sheriff's deputies to take the defendant "to his former home, and to the District Attorney's office for questioning" before producing the defendant before a magistrate].)  These cases have no application here, because Upshaw does not seek a temporary release from the custody of SRJ, but rather a transfer to another county detention facility for an indefinite duration.

We conclude section 4004 does not authorize the transfer of a prisoner between county detention facilities. Having reached this conclusion, we need not consider whether Upshaw established good cause under section 4004.

II.

*Under Section 4007, a Prisoner May Request a Transfer to a Jail in a Contiguous County upon a Sufficient Evidentiary Showing the Current Jail is Unsafe for Confinement, but Only After Exhausting Administrative Remedies*

In its first paragraph, section 4007 provides: "When there is no jail in the county, or when the jail becomes unfit or unsafe for the confinement of prisoners, the judge of the superior court may, by a written order filed with the clerk of the court, designate the jail of a contiguous county for the confinement of any prisoner of his or her county, and may at any time modify or vacate the order."[6]

Section 4007 authorizes transfers in other situations. For example, the second paragraph of section 4007 allows a sheriff to remove a prisoner to a "state prison for

_____

[6] Section 4007 is derived from former section 21, which provided: "When there is no Jail in the county, or when the Jail becomes unfit or unsafe for the confinement of prisoners, the County Judge may, by written appointment filed with the County Clerk, designate the jail of a contiguous county for the confinement of the prisoners of his county, or any of them, and may at any time modify or annul the appointment." (Stats. 1851, ch. 23, § 21, p. 193.) In 1872, the legislature enacted former section 1603, making slight changes from former section 21. In 1937, the Legislature added a second paragraph, regarding the circumstances under which a sheriff may remove a prisoner for safekeeping. (Stats. 1937, ch. 174, § 1, p. 472.). In 1941, former section 1603 became section 4007. (Stats. 1941, ch. 106, § 1, p. 1120.)

In 1985, the legislature amended the fourth paragraph of the statute, which concerns a transfer of a prisoner posing a threat to other inmates. (Stats. 1985, ch. 430, § 1, p. 1696.) The statute had referred to prisoners, plural, acting in concert; the 1985 amendment changed "prisoners . . . acting in concert" to "prisoner," to allow a single prisoner to be transferred. (Legis. Counsel's Dig., Assem. Bill No. 1517 (1985–1986 Reg. Sess.) 4 Stats. 1985, Summary Dig., p. 135.) According to the legislative history, the amendment was necessary because a request for the transfer of a single prisoner had been denied because the prisoner was not acting in concert with other prisoners. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1517 (1985–1986 Reg. Sess.) as amended Jun. 10, 1985, p. 2.) In 1990, the legislature changed "the confinement of the prisoners of his county . . . ." to "the confinement of any prisoner of his or her county . . . ." (Stats. 1990, ch. 1353, § 1, p. 5945.)

safekeeping" when "there are reasonable grounds to believe" the prisoner "may be forcibly removed from a county jail." The third paragraph of section 4007 authorizes the trial court—on the request of the sheriff and with the consent of the Director of Corrections—to "designate by written order the nearest state prison or correctional facility" when (1) "a county prisoner requires medical treatment necessitating hospitalization which cannot be provided at the county jail or county hospital because of lack of adequate detention facilities, and when the prisoner also presents a serious custodial problem because of his . . . past or present behavior"; and (2) when "there are reasonable grounds to believe that there is a prisoner in a county jail who is likely to be a threat to other persons in the facility or who is likely to cause substantial damage to the facility." In these latter two situations, the trial court must hold a "hearing to determine whether the order shall continue or be rescinded." Our focus is whether a threat to a prisoner's personal safety renders a jail "unsafe" under the first paragraph of section 4007.

> A.  Section 4007 Authorizes the Transfer of a Prisoner to a Jail in a Contiguous County upon a Sufficient Evidentiary Showing the Current Jail is Unsafe for Confinement

Upshaw contends a county jail inmate may seek a transfer to a jail in a contiguous county under section 4007 where the current jail is "unsafe for the confinement of prisoners," be it a single prisoner or a group of prisoners. The Sheriff offers several arguments to the contrary, none of which are persuasive. First, the Sheriff claims section 4007's use of "prisoners" in its first sentence demonstrates the statute applies only to "*prisoners, plural*." (Italics added.) We disagree. Section 4007 uses the plural noun "prisoners," but it also employs the singular within the same sentence—it authorizes the trial court to "designate the jail of a contiguous county for the *confinement of any prisoner*." (Italics added.) As to words used in the Penal Code, "the singular number includes the plural, and the plural the singular." (§ 7.) " 'The rule of construction enunciated in section 7 is no mere rubric—it is the law.' " (*People v. Catelli* (1991) 227 Cal.App.3d 1434, 1451.) Because "prisoners" includes "prisoner," we cannot conclude

11

section 4007's use of the plural in the first sentence indicates an intent to restrict the scope of the statute to *groups* of prisoners. (See 58 Ops.Cal.Atty.Gen. 533, 535 (1975) [under first paragraph of section 4007, "the prisoner" may be transferred to the jail of a contiguous county]; *Lisenba, supra,* 314 U.S. at p. 235, fn. 12 [referring to section 4007's predecessor statute as authorizing "the removal of *a prisoner* from jail"]; also *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 464–465 [use of singular and plural in related statutes reflected "a matter of style," not an "intent to achieve a particular substantive legal effect"].)

This construction of section 4007 is guided by a well-established principle of statutory construction, which requires us to interpret the words in the statute to " ' " 'make them workable and reasonable [and] , . . . practical [citations], in accord with common sense and justice, and to avoid an absurd result.' " ' " (*Bay Guardian Co. v. New Times Media LLC* (2010) 187 Cal.App.4th 438, 461; *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744.) Limiting the first paragraph of section 4007 to a prison population generally would invite confusion because the remaining paragraphs of the statute refer to "a prisoner." (See, e.g., *In re Hodges* (1979) 89 Cal.App.3d 221, 226, fn. 2 [section 4007 authorizes transfer of an individual "inmate to state prison for safekeeping or medical treatment"]; *People v. Hodge* (1957) 147 Cal.App.2d 591, 595 [section 4007 allows the sheriff "to remove *a prisoner* to a . . . state prison 'for safekeeping' "].) Additionally, giving the first paragraph of section 4007 an interpretation that reaches groups of prisoners—but not an individual prisoner—defies common sense and would produce an absurd result. Such an interpretation would, for example, allow the transfer where a prison condition impacts a group of prisoners but not where the condition affects only one prisoner.

The Sheriff's reliance on *Clark v. Adams* (E.D.Cal., Mar. 27, 2009, No. 2:06-CV-00733-JKS) 2009 U.S. Dist. LEXIS 25287 is unavailing. In *Adams*, the defendant filed a one-paragraph pretrial transfer motion in state superior court, alleging he had been forcibly sodomized. (*Id.* at p. *53, fn. 13.) The superior court denied the motion, concluding "section 4007, which deals with general conditions of confinement, did not

12

apply to defendant's complaint, and that he should seek a writ of habeas corpus instead. Defendant did not do so." (*Id.* at p. *52.) After his conviction, the defendant filed a petition for writ of habeas corpus in federal district court alleging, among other things, that the sheriff's " 'pattern of oppression and harassment' " deprived him of due process. (*Id.* at pp. *1–*3.) The defendant, however, did not challenge the superior court's interpretation of section 4007. (*Id.* at pp. *52–*54.) The *Adams* court denied the writ petition and declined to consider the defendant's claims regarding section 4007, concluding: "[b]ecause defendant took no measures after the denial of his section 4007 motion to bring the issue he now raises to the trial court's attention by any appropriate means and obtain a ruling on it, the issue is not preserved for appeal." (*Id.* at p. *55.) *Adams* does not assist the Sheriff because it did not consider the issue presented here. " 'Cases do not stand for propositions that were never considered by the court.' " (*Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, 1156.) Moreover, "we are not bound by decisions of the lower federal courts." (*People v. Crittenden* (1994) 9 Cal.4th 83, 120, fn. 3.)

Next, the Sheriff contends section 4007 applies "exclusively to sheriff-initiated inmate movements." Again, we disagree. Section 4007 allows the trial court to "designate the jail of a contiguous county for the confinement of any prisoner" by "written order filed with the clerk of the court" and to "at any time modify or vacate the order." The statute does not specify who requests a transfer when conditions are unsafe for confinement, nor does it preclude a prisoner from seeking relief when such conditions are unsafe. We decline to insert a requirement not imposed by the statute. (*People v. Lee* (2003) 31 Cal.4th 613, 626.) Had the Legislature intended to limit section 4007 to sheriff-initiated transfers, the Legislature could have done so, as it did in the second and third paragraphs of the statute. The Sheriff's reliance on *City and County of Sacramento v. Hardy* (1861) 18 Cal. 412 does not alter our conclusion. *Hardy* held the warden of the Sacramento County jail was entitled, under section 4007's predecessor statute, to retain money received from Yolo County after prisoners from that county were transferred to

13

Sacramento County.  (*Id.* at pp. 412, 413.)  *Hardy* does not stand for the proposition that section 4007 is limited to sheriff-initiated transfers.

Nor are we persuaded by the Sheriff's claim that section 4007 is limited to habitability and structural conditions.  Section 4007 does not define "unsafe."  " 'When a term goes undefined in a statute, we give the term its ordinary meaning.' "  (*De Vries v. Regents of University of California* (2016) 6 Cal.App.5th 574, 590–591.)  "In divining a term's 'ordinary meaning,' courts regularly turn to general and legal dictionaries."  (*Id.* at p. 591; *People v. Hodges* (1999) 71 Cal.App.4th 1348, 1355.)  The Oxford English Dictionary defines "unsafe" as "not enjoying safety; exposed to danger or risk."  (Oxford English Dict. (2d ed. 1989) p. 180.)  The American Heritage Dictionary similarly defines "unsafe" as "not safe; dangerous."  (American Heritage Dict. (3d ed. 1996) p. 1958; see also Merriam-Webster's Collegiate Dict. (11th ed. 2014) p. 1095 [defining "safe" as "free from harm or risk, unhurt" and "secure from threat of danger, harm, or loss"].)  Thus, the ordinary meaning of "unsafe" connotes a situation where a person is at risk of harm, i.e. exposed to danger.

We can conceive of a situation where broad habitability conditions—such as overcrowding—may render a jail unsafe for confinement.  (See, e.g., Welf. & Inst. Code, § 872 [defining "unfit and unsafe" to "include a condition in which a juvenile hall is considered . . . to be too crowded for the proper and safe detention of minors"].)  But the plain language of section 4007 is not limited to such conditions.  We conclude that, pursuant to section 4007, a prisoner may seek a transfer to a jail in a contiguous county where he or she makes a sufficient evidentiary showing the current jail is unsafe for his or her confinement.[7]

---

[7] In light of our conclusion, we need not comment on the sufficiency of the evidence to support Upshaw's claim that SRJ is "unsafe" within the meaning of section 4007, except to note that the trial court did not—as Upshaw argues—make a factual finding that her "safety is in present danger."  Upshaw urges us to conclude a violation of section 4029, which concerns equal treatment of male and female inmates in county jails, necessarily renders a jail " 'unsafe for the confinement of prisoners.' "  We decline to do so.  Ford's conclusory declaration does not establish a violation of section 4029.  (See

14

Even though we determine section 4007 authorizes a trial court to transfer a county jail prisoner to a jail in a contiguous county where that prisoner makes a sufficient evidentiary showing the current jail is unsafe for confinement, Upshaw is not entitled to relief because—as we discuss below—she failed to exhaust administrative remedies before filing her motion for a transfer.

### B. Upshaw Failed to Exhaust Administrative Remedies Before Seeking a Transfer

" '[T]he rule of exhaustion of administrative remedies is well established in California jurisprudence.' [Citation.] 'In brief, the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act.' [Citation.] The rule 'is not a matter of judicial discretion, but is a fundamental rule of procedure . . . binding upon all courts.' [Citation.] 'Exhaustion of administrative remedies is "a jurisdictional prerequisite to resort to the courts." ' [Citations.]

"The rule serves several well-established functions. First, it allows the administrative agency an opportunity to redress the alleged wrong without resorting to costly litigation. [Citation.] Second, even where complete relief is not obtained, it can serve to reduce the scope of the litigation or possibly avoid litigation. [Citations.] Third, an administrative remedy ordinarily provides a more economical and less formal forum to resolve disputes and provides an opportunity to mitigate damages. [Citations.] Finally, the exhaustion requirement promotes the development of a more complete factual record and allows the administrative agency or entity implicated in the claim an opportunity to

---

3 Witkin, Cal. Crim. Law (4th ed. 2012) Punishment, § 23, p. 71.) We express no opinion on whether a violation of section 4029 would support a finding that a county jail is "unsafe" for the confinement of prisoners under section 4007.

We also reject Upshaw's contention that SRJ denied her adequate access to counsel. Upshaw does not argue the purported lack of adequate access to counsel renders a jail "unsafe." " 'Issues do not have a life of their own: if they are not raised or supported by [substantive] argument or citation to authority, we consider the issues waived.' " (*People v. Halim* (2017) 14 Cal.App.5th 632, 644, fn. 8.)

apply its expertise, both of which assist later judicial review if necessary. [Citations.] Indeed, '[t]he utility of the department's factfinding expertise exists even when the plaintiff's requested relief is unavailable through the administrative process.' " (*Los Globos Corp. v. City of Los Angeles* (2017) 17 Cal.App.5th 627, 632–633.) "The exhaustion doctrine operates as a defense to litigation commenced by persons who have been aggrieved by action but who have failed to exhaust the administrative remedy available to them." (*Id.* at p. 633.)

Upshaw does not argue there was no administrative remedy available to her, nor that the administrative remedy was not disclosed to her.[8] (See *Wright v. State of California* (2004) 122 Cal.App.4th 659, 664–667 [describing administrative exhaustion requirement for state prison inmates]; *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 478 [defendants could not rely on plaintiff's failure to exhaust an internal remedy where plaintiff was never informed of that remedy].) She does not dispute receiving the Inmate Rules and Regulation booklet, which details the procedures available to ensure inmate safety at SRJ, nor does she claim she is unaware of the SRJ grievance procedure. Upshaw acknowledges filing several grievances, but not on the alleged threats to her safety. She does not describe the exhaustion of administrative remedies doctrine with citations to authority, nor does she explicitly contend her situation falls within an exception to the exhaustion doctrine.

Instead, Upshaw suggests she exhausted administrative remedies by making "several efforts" to inform the Sheriff of her complaints before "seeking judicial intervention" and was told "there was nothing that could be done." But at oral argument,

---

[8] Upshaw devotes approximately one page of her reply brief to the exhaustion of remedies issue. We are dismayed by Upshaw's undeveloped analysis and inadequate briefing, particularly in light of our order requesting briefing on this issue. In her briefing, Upshaw states it "is not clear" whether the exhaustion rule applies. At oral argument, however, she explicitly argued for the first time that the exhaustion rule does *not* apply, and that imposing such a rule would violate her constitutional rights. We decline to consider these conclusory and untimely arguments. (See *People v. Stewart* (2004) 33 Cal.4th 425, 476; *People v. Harris* (1992) 10 Cal.App.4th 672, 686.)

Upshaw's counsel conceded the record does not establish he discussed "safety issues" with the Sheriff. Moreover, Upshaw does not provide a record citation to support her claim that her attorney "was told that there was nothing that could be done." We reject any argument premised on Ford's conversation with a sheriff's deputy. Evidence that an agency staff member expressed an opinion that the agency could do nothing further for the plaintiff does not constitute evidence of exhaustion. "If the doctrine requiring exhaustion of administrative remedies could be satisfied by an oral hearsay statement from an employee of the governmental administrative agency involved[,] the doctrine would be rendered meaningless and ineffective." (*Wilkinson v. Norcal Mutual Ins. Co.* (1979) 98 Cal.App.3d 307, 315; see also *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292–295, 301.)

Upshaw's briefs do not mention the word "futile" or "futility," and we reject her claim—made for the first time at oral argument—that exhaustion would be futile. The "futility" exception to the exhaustion of administrative remedies "is a very narrow one." (*County of Contra Costa v. State of California* (1986) 177 Cal.App.3d 62, 77.) "Failure to exhaust administrative remedies is excused if it is clear that exhaustion would be futile." (*Jonathan Neil & Assoc., Inc. v. Jones* (2004) 33 Cal.4th 917, 936.) " 'The futility exception requires that the party invoking the exception "can positively state that the [agency] has declared what its ruling will be on a particular case." ' " (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080–1081; *Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1313.)

Here, Upshaw has not positively stated the Sheriff has declared its ruling, i.e. that the Sheriff would have denied Upshaw's grievance had she submitted one. The evidence suggests the contrary—that the Sheriff would have considered Upshaw's grievance and attempted to accommodate her. As detailed in Russell's declaration, the Sheriff interviewed Upshaw after learning of the "threat[en]ing actions" described in the motion to transfer, and asked Upshaw whether she felt she "needed to be housed in a different location out of fear for her safety." Upshaw refused to answer without consulting her

17

attorney. The Sheriff also offered evidence, undisputed by Upshaw, that it "routinely accommodates the housing, medical, rehabilitative and other needs of inmates who . . . can have no contact with one another," that it had "accommodated Upshaw to date," and that there was "no impediment" to accommodating Upshaw "going forward." Because there is no evidence the Sheriff had taken any position, let alone declared what its ruling would be, Upshaw cannot establish futility in pursuing the required administrative procedures. (*Bennett v. Borden, Inc.* (1976) 56 Cal.App.3d 706, 710 ["preconception of the futility of administrative action" does not permit plaintiff "to bypass the administrative remedy"].)

## DISPOSITION

The petition for writ of mandate is denied. This decision is final in 10 court days. (Cal. Rules of Court, rule 8.490(b)(2)(A).)

_____

Jones, P. J.

We concur:

_____

Simons, J.

_____

Bruiniers, J.

A152141

Tikisha Marie Upshaw v. Superior Court for the County of Alameda


Trial Court:    Alameda County Superior Court

Trial Judge:    Honorable Armando G. Cuellar, Jr.

Counsel:

J. Tony Serra, Brian A. Ford and Curtis L. Briggs, for Petitioner Tikisha Marie Upshaw.

No appearance for Respondent Superior Court of Alameda County.

Nancy E. O'Malley, District Attorney for Real Party in Interest the People.

Donna R. Ziegler, County Counsel and Eva K. Schueller, Deputy County Counsel for Real Party in Interest Alameda County Sheriff's Office.