Filed 7/19/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CAHILL CONSTRUCTION COMPANY, INC., et al.,<br><br>    Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>    Respondent;<br><br>EDWARD RICHARDS et al.,<br><br>    Real Parties in Interest. | A162885<br><br>(Alameda County<br>Super. Ct. No. RG21088294) |

Code of Civil Procedure section 2025.295 caps the amount of time a plaintiff may be deposed when two conditions are met: first, the civil action must be "for injury or illness that results in mesothelioma" (*id.*, subd. (a)); and second, a licensed physician must declare the plaintiff "suffers from mesothelioma . . . , raising substantial medical doubt of the survival of the [plaintiff] beyond six months."[1] (*Ibid*.) If both conditions are met, "a deposition examination of the plaintiff by all counsel, other than the plaintiff's counsel of record, shall be limited to seven hours of total testimony." (*Ibid*.) But the statute permits a trial court to grant up to an additional seven hours—"for no more than 14 hours of total deposition

---

[1] Undesignated statutory references are to the Code of Civil Procedure. These conditions also apply to silicosis.

1

conducted by the defendants"—if more than 20 defendants appear at the deposition, the court determines that the additional time is warranted in the interest of fairness, and the additional time does not appear to endanger the plaintiff's health. (*Id.*, subds. (b)(2), (c).)

Cahill Construction Company, Inc.'s petition for writ of mandate presents an issue of first impression: may a trial court grant deposition time in excess of the 14-hour cap set forth in section 2025.295, subdivision (b)(2)?[2] The answer—based on the unambiguous language of section 2025.295 and the evident legislative purpose underlying its enactment—is no. Indeed, the arguments advanced by Cahill are identical to those considered, and rejected, by the Legislature when it enacted section 2025.295. Other Code of Civil Procedure provisions addressing a court's right to control discovery do not alter our conclusion. Nor are we persuaded that section 2025.295's limitation on deposition time violates Cahill's due process rights under the federal Constitution.

We deny the writ petition.

## BACKGROUND

In early 2021, Edward and Linda Richards (collectively, plaintiffs) filed a lawsuit against 105 defendants, including Cahill. The complaint includes 11 causes of action arising out of Richards's alleged asbestos exposure and seeks compensatory and punitive damages. The trial court granted trial

---

[2] Additional petitioners are Cahill Contractors, Inc.; Foster Wheeler LLC; Fryer-Knowles, Inc.; Nibco Inc.; O'Reilly Auto Enterprises, LLC; and Swinerton Builders. We refer to petitioners collectively as Cahill. We refer to all defendants, including the 98 additional defendants who are not parties to this writ proceeding, collectively as defendants. We take judicial notice of legislative history materials for section 2025.295. (*Heckart v. A-1 Self Storage, Inc.* (2018) 4 Cal.5th 749, 767, fn. 8.)

preference based on a declaration from Richards's treating physician that Richards, then 72 years old, was suffering from mesothelioma and had a life expectancy of fewer than six months. Trial is set to begin in August.

Defendants propounded written discovery to plaintiffs. Plaintiffs' voluminous responses to standard interrogatories identified numerous products, job sites, and employers that plaintiffs claimed were responsible for Richards's exposure to asbestos during his 30-year career as a pipefitter. Plaintiffs provided defendants with the transcript of Richards's prior deposition, taken in asbestos litigation involving Richards's co-worker, during which Richards was questioned about his work history and familiarity with asbestos-containing products. They also produced Richards's employment records.

Thereafter, plaintiffs noticed Richards's deposition. Cahill moved for a protective order under section 2025.420 to extend the presumptive seven-hour limit provided for in section 2025.295, subdivision (a).[3] Based on section 2025.295, subdivision (b)(2), the court granted defendants a total of 14 hours to depose Richards. Pursuant to subdivision (c) of the statute, the court determined that giving defendants more than seven hours to depose Richards did not appear to endanger his health and the number of defendants militated in favor of allowing them "the maximum permissible period in which" to depose Richards. But the court declined to grant defendants more than 14 hours. Section 2025.295, the court concluded, imposed a " 'clear

---

[3] Section 2025.420 authorizes a trial court to issue a protective order "[b]efore, during, or after a deposition." (*Id.*, subd. (a).) For good cause shown, the court "may make any order that justice requires to protect any party, deponent, or other natural person or organization from unwarranted annoyance, embarrassment, or oppression, or undue burden and expense." (*Id.*, subd. (b).)

cap' " of 14 hours of total deposition conducted by defense counsel and "eliminated" the court's discretion to exceed that cap when a physician attests the plaintiff has mesothelioma and declares a substantial medical doubt of the plaintiff's survival beyond six months.

Plaintiffs' counsel deposed Richard for between eight and nine hours. Approximately 80 to 90 defendants appeared at the deposition. Defendants deposed Richards for 14 hours. During that time, defendants jointly questioned Richards "regarding issues relevant to all of them" and each defendant briefly questioned Richards as to its own particular product or conduct.

After defendants' deposition concluded, Cahill renewed its protective order motion, arguing the cap on deposition time deprived defendants of the ability to effectively depose Richards and prepare for trial. To support this argument, Cahill offered declarations from defense counsel and excerpts from Richards's deposition transcript. Plaintiffs opposed the motion. They highlighted the availability of other discovery methods and the uncontroverted evidence that further deposition would endanger Richards's health.[4]

A different judge heard the renewed motion and denied it. In a thorough written order, the court concluded a trial court retains "limited discretion" under section 2025.295 to lengthen a deposition beyond 14 hours. Referring to section 2025.420, the court observed "other provisions of the Discovery Act empower the Court to prevent gamesmanship and sanctionable conduct in deposition, like bullying or improper coaching, and to provide a

---

[4] At the time they moved for a protective order, defendants had not deposed Richards's wife or his former employers, nor taken any percipient witness depositions.

4

remedy for such gamesmanship that could include additional deposition time."

But the court declined to exercise its "limited discretion," concluding additional deposition time in excess of the section 2025.295 cap was "not warranted by the facts of the case." It found the deposition transcript was free of "gamesmanship" or "questionable conduct"—such as repeated and frivolous speaking objections or evasive answers—that might warrant a protective order under section 2025.420. It also opined defense counsel "cover[ed] a substantial amount of ground" during common questioning and noted Cahill had failed to show other discovery methods, including depositions of percipient witnesses and contention interrogatories, were inadequate to prepare for trial.

The court also rejected Cahill's due process argument. It questioned whether a party had a constitutional right to discovery in general, or depositions in particular, and then held section 2025.295 "passe[d] muster" under the federal Constitution. The court concluded that in enacting section 2025.295, the Legislature deemed it appropriate to limit deposition time for a "small class of terminally ill witnesses." The court posited a reasonable layperson might reach the same conclusion. Finally, the court opined the statute complied with " 'fundamental principles of fairness and decency.' " It certified its ruling for interlocutory appeal (§ 166.1).

This writ petition followed. We issued an order to show cause to consider the novel statutory questions outlined in the trial court's certification and other issues pressed in the petition.[5] (*Paul Blanco's Good Car Company Auto Group v. Superior Court* (2020) 56 Cal.App.5th 86, 99.)

---

[5] Mindful of the rapidly approaching preferential trial date, we expedited briefing and oral argument.

5

Writ review is appropriate because the petition presents questions of first impression "of general importance to the trial courts and to the profession" that are amenable to the issuance of "general guidelines . . . for future cases." (*Oceanside Union School Dist. v. Superior Court* (1962) 58 Cal.2d 180, 185–186, fn. 4.) The need for writ review is further demonstrated by the fact that two judges in the same superior court reached conflicting interpretations of the statute. (*Zembsch v. Superior* Court (2006) 146 Cal.App.4th 153, 161, fn. 4.) Additionally, Cahill made an adequate showing that it lacked adequate remedies at law and would suffer irreparable harm absent writ review. (*Los Angeles Gay & Lesbian Center v. Superior Court* (2011) 194 Cal.App.4th 288, 299–300.)

## DISCUSSION

### A. Construction of Section 2025.295

Well-settled principles guide our interpretation of the statute. "Our fundamental task is to ascertain the Legislature's intent and effectuate the law's purpose, giving the statutory language its plain and commonsense meaning. [Citation.] We examine that language in the context of the entire statutory framework to discern its scope and purpose and to harmonize the various parts of the enactment. [Citation.] 'If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.] The wider historical circumstances of a law's enactment may also assist in ascertaining legislative intent, supplying context for otherwise ambiguous language." (*Kaanaana v. Barrett Business Services, Inc.* (2021) 11 Cal.5th 158, 168–169.) "The interpretation of a

statute presents a question of law that this court reviews de novo." (*Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 190.)

A party in a civil proceeding has a statutory right to conduct discovery. (§ 2017.010, subd. (a).) One way a party "may obtain" that discovery is by taking an oral deposition. (§ 2019.010, subd. (a).) Until 2019, section 2025.290 governed the length of depositions in cases like the one at issue here. (Stats. 2012, ch. 346, § 1.) That statute limits the deposition of a witness by counsel other than the witness's counsel to "seven hours of total testimony" but also requires the court to "allow additional time . . . if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." (§ 2025.290, subd. (a).) Subdivision (b) excepts complex cases, unless a "licensed physician attests in a declaration . . . that the deponent suffers from an illness or condition that raises substantial medical doubt of survival of the deponent beyond six months." (*Id.*, subd. (b)(3).) In that instance, the statute limits deposition by counsel other than the witness's counsel to "14 hours of total testimony." (*Ibid.*) Subdivision (c) provides that the statute does not "affect the existing right of any party to move for a protective order or the court's discretion to make any order that justice requires to limit a deposition in order to protect any party, deponent, or other natural person or organization from unwarranted annoyance, embarrassment, oppression, undue burden, or expense." (*Id.*, subd. (c).)

*Certainteed Corp. v. Superior Court* (2014) 222 Cal.App.4th 1053 (*Certainteed*) interpreted section 2025.290 to permit depositions to exceed subdivision (b)(3)'s 14-hour limit "if additional time is 'needed to fairly examine the deponent.' " (*Certainteed*, at p. 1061.) *Certainteed* held "section 2025.290 not only authorizes the court to allow additional time to depose a

7

witness in these circumstances, but *requires* it to do so unless the court, in its discretion, determines that the deposition should be limited for another reason." (*Id.* at p. 1062, italics added, citing § 2025.290, subd. (c).) Under *Certainteed*, a trial court is authorized—and indeed obligated—to extend the deposition of a terminally-ill plaintiff beyond 14 hours when the defendant shows "additional time [is] needed to fairly examine" the plaintiff. (*Certainteed*, at p. 1061.)

The Legislature changed the law—and responded to *Certainteed*—by adding section 2025.295 in 2019. (Stats. 2019, ch. 212, § 1.) Effective January 1, 2020, section 2025.295, subdivision (a) provides: "Notwithstanding Section 2025.290, in any civil action for injury or illness that results in mesothelioma . . . , a deposition examination of the plaintiff by all counsel, other than the plaintiff's counsel of record, shall be limited to seven hours of total testimony if a licensed physician attests in a declaration served on the parties that the deponent suffers from mesothelioma . . . , raising substantial medical doubt of the survival of the deponent beyond six months."

Subdivision (b) provides: "Notwithstanding the presumptive time limit in subdivision (a), upon request by a defendant, a court may, in its discretion, grant one of the following up to: [¶] (1) An additional three hours of deposition testimony for no more than 10 hours of total deposition conducted by the defendants if there are more than 10 defendants appearing at the deposition[;] [¶] (2) An additional seven hours of deposition testimony for no more than 14 hours of total deposition conducted by the defendants if there are more than 20 defendants appearing at the deposition." Subdivision (c) provides that the "court may grant the additional time" under subdivision (b) "only if it finds that an extension, in the instant case, is in the interest of

8

fairness, which includes consideration of the number of defendants appearing at the deposition, and determines that the health of the deponent does not appear to be endangered by the grant of additional time."

In construing section 2025.295, we begin with the words of the statute. Subdivision (a) states that "[n]otwithstanding [s]ection 2025.290," the deposition of a terminally-ill mesothelioma plaintiff by counsel other than plaintiff's own counsel "shall be limited to seven hours of total testimony." The Legislature's use of the word "notwithstanding" means, with regard to this narrow class of individuals, the statute supplants section 2025.290, the language of which *Certainteed* had interpreted as authorizing a deposition in excess of 14 hours.

Section 2025.295, subdivision (b)(2) provides that, "[n]otwithstanding the presumptive time limit in subdivision (a)," the court "may, in its discretion, grant . . . *up to*: [¶] . . . [¶] . . . [a]n additional seven hours of deposition testimony *for no more than* 14 hours of total deposition conducted by the defendants if there are more than 20 defendants appearing at the deposition." (Italics added.) Merriam-Webster's dictionary defines the prepositional phrase "up to" as a "function word to indicate a limit or boundary." (Merriam-Webster Dict. Online (2021) <https://merriam-webster.com/dictionary/up to> [as of July 19, 2021].) The ordinary meaning of "no more than" is "a stated number or fewer." (Merriam-Webster Dict. Online, *supra*, <https://merriam-webster.com/dictionary/no more than> [as of July 19, 2021].) The language of subdivision (b)(2) is clear and unambiguous: a trial court has discretion to grant up to—but no more than—14 hours for defense counsel to depose a terminally-ill mesothelioma plaintiff.

Cahill argues section 2025.295 does not preclude a trial court from granting defendants more than 14 hours when additional time is "justified,"

9

such as when the plaintiff has a lengthy history of alleged asbestos exposure and a large number of defendants appears at the deposition. Not so. Cahill's interpretation contravenes the statute's plain language and renders the phrase "for no more than" meaningless. Had the Legislature wanted to provide the trial court with discretion to increase the time limit beyond 14 hours, it could have done so—such as it did in section 2025.290. It did not. We cannot " 'rewrite a statute, either by inserting or omitting language, to make it conform to a presumed intent that is not expressed.' " (*Kaanaana v. Barrett Business Services, Inc.*, *supra*, 11 Cal.5th at p. 171.) Moreover, "courts are without power to expand the methods of civil discovery beyond those authorized by statute." (*Holm v. Superior Court* (1986) 187 Cal.App.3d 1241, 1247.)

Cahill's argument also ignores the Legislature's stated purpose in enacting section 2025.295, which was to "protect dying mesothelioma . . . victims by limiting cross-examination in a deposition" to 14 hours. (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 645 (Reg. Sess. 2019–2020) as amended July 5, 2019, p. 4 (Sen. Rules Com.).) The statute was a direct response to *Certainteed*, which interpreted section 2025.290, subdivision (b)(3) to authorize depositions in excess of 14 hours: the Legislature expressed concern that the *Certainteed* rule was being used to allow "marathon depositions" that were inflicting "undue emotional and physical harm on victims during their final days of life — even hastening death." (Sen. Rules Com., at pp. 4, 5–6.) Section 2025.295 thus placed a "tight limit on the length of deposition testimony, affording courts discretion to extend . . . *up to 14 hours of total deposition* where there are more than 20 defendants." (Sen. Rules Com., at p. 6, italics added; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 645 (2019–2020 Reg. Sess.) Apr. 2, 2019, p. 7 ["[t]his

bill places a tight limit on the length of deposition testimony, affording courts *discretion only* to extend" to the provided for cap] (Sen. Com. on Judiciary), italics added.)

When the bill was introduced, the Legislature acknowledged "asbestos litigation is generally highly complex and involves numerous defendants." The Legislature considered several factors, including whether the proposed deposition length would be "sufficient in cases with dozens of defendants," the importance of deposition testimony in asbestos litigation, and the availability of other methods of discovery. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 645 (Reg. Sess. 2019–2020) June 4, 2019, pp. 6–8.) But the Legislature also expressed concern that existing law governing depositions was being "utilized as a tool to stall litigation or needlessly harass plaintiffs." (*Id.* at p. 1.) Moreover, the Legislature considered, and rejected, the very arguments Cahill makes here: that the cap on defense deposition length unfairly limited cross-examination and that the bill violated a defendant's due process rights. (Sen. Com. on Judiciary, *supra*, pp. 6–7.) The Legislature ultimately settled on a "clear cap" of 14 hours (Sen. Rules Com., *supra*, at p. 4) and "narrowly aimed" the legislation "at only those deponents whose time is in short supply, and [for whom] special consideration is arguably warranted." (*Id.* at p. 6.) The Legislature concluded the statute "provide[d] a reasonable limitation on deposition testimony in a narrow subset of cases based on documented and extremely critical health concerns." (*Ibid.*)

In sum, the unambiguous statutory language and the legislative history unquestionably demonstrate the Legislature's purpose in enacting section 2025.295 was to impose strict time limits on a small class of depositions, eliminate a trial court's discretion to exceed the 14-hour cap, and thereby protect a uniquely vulnerable population.

**B.    Section 2025.420**

Cahill's reliance on section 2025.420, which authorizes a trial court to issue a protective order to control deposition conduct, does not persuade us that courts have the authority to grant additional deposition time in excess of the 14-hour limit imposed by section 2025.295.  Section 2025.420, subdivision (b) provides a nonexhaustive list of orders that may be issued, such as that "the deposition not be taken at all," or that "the scope of the examination be limited to certain matters."  (*Id.*, subd. (b)(1), (b)(10); *Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 316.)  The statute does not explicitly allow deposition time in excess of statutory limits, and Cahill cites no case law supporting such a construction.  (*Upshaw v. Superior Court* (2018) 22 Cal.App.5th 489, 504, fn. 7.)

Even assuming section 2025.420 gives courts the power to grant additional deposition time, the more specific and later enacted statute—section 2025.295—prevails.  (*Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 634.)  And, unlike section 2025.290, which explicitly disclaimed any intent to affect a party's ability to seek a protective order, section 2025.295 contains no such language.  Moreover, the Legislature was aware of section 2025.420 when it enacted section 2025.295, yet it made no mention of the protective order statute when discussing the strict time limits it was considering, a further indication the Legislature did not intend to permit a party to use section 2025.420 to circumvent the cap on deposition time.  (Sen. Com. on Judiciary, *supra*, p. 2; Sen. Rules Com., *supra*, p. 1; *see Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 309.)  The foregoing demonstrates the Legislature intended to enact a hard 14-hour cap on this class of depositions, brooking no exception.

12

### C. Due Process Challenge

Cahill concedes section 2025.295 is facially valid but contends it is unconstitutional as applied because the statute violates Cahill's rights to "due process and confront witnesses" under the federal Constitution. "A person's right of cross-examination and confrontation of witnesses against him in noncriminal proceedings is a part of procedural due process guaranteed by the Fifth Amendment and the Fourteenth Amendment to the federal Constitution, where there is involved a threat to life, liberty or property." (*August v. Department of Motor Vehicles* (1968) 264 Cal.App.2d 52, 60.) In civil proceedings, " ' " [d]ue process requires only that the procedure adopted comport with fundamental principles of fairness and decency. The due process clause of the Fourteenth Amendment does not guarantee to the citizen of a state any particular form or method of procedure.' " ' " (*People v. Bona* (2017) 15 Cal.App.5th 511, 520.)

An as-applied challenge " 'contemplates analysis of the facts of a particular case . . . to determine the circumstances in which the statute . . . has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right.' [Citation.] When reviewing an as-applied constitutional challenge on appeal, we defer to the superior court's findings on historical facts that are supported by substantial evidence and then independently review the constitutionality of the statute under those facts." (*California Advocates for Nursing Home Reform v. Smith* (2019) 38 Cal.App.5th 838, 840.)[6]

---

[6] Cahill does "not dispute [the trial court's] finding that [s]ection 2025.295 survives a *facial* constitutional challenge." As it did below, however, Cahill "appear[s] to blend the concepts of facial and as-applied constitutional challenges" in its briefing. Moreover, with regard to its as-

Here, in denying Cahill's request for a protective order, the court found the statutory cap did not prevent defendants from effectively participating in the deposition. Substantial evidence supports that finding. The record demonstrates defense counsel "cover[ed] a substantial amount of ground" during common questioning and that each defendant also conducted individual questioning. The court also found the statute did not prevent defendants from taking advantage of the myriad other forms of discovery available to them, including depositions of percipient witnesses and contention interrogatories to plaintiffs. Substantial evidence supports that factual finding. In light of these findings, Cahill's as-applied challenge to the statute fails.[7]

_____

applied argument, Cahill does not acknowledge "the standard of review, in and of itself a potentially fatal omission." (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948.) Cahill cites *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, but that case does not assist petitioners. There, the "plaintiffs did not clearly allege" an as-applied "challenge or seek relief from specific allegedly impermissible applications of the ordinance." (*Id.* at p. 1083.) The California Supreme Court held that even "assuming that an as applied attack on the ordinance was stated, the plaintiffs did not establish that the ordinance was applied in a constitutionally impermissible manner." (*Ibid.*)

[7] This court's decision to entertain writ review of Cahill's novel as-applied due process challenge to section 2025.295 should not be understood to dictate that appellate courts will grant writ review of future trial court rulings on this subject. (*Oceanside Union School Dist. v. Superior Court, supra*, 58 Cal.2d at pp. 185–186, fn. 4.) Establishing that an aggrieved petitioner lacks other adequate remedies at law and will suffer irreparable harm from an adverse determination on such a due process claim is inherently difficult for a variety of reasons, including the ongoing nature of discovery proceedings, the availability of a myriad of discovery tools other than depositions, the possibility of defendants developing other evidence that may mitigate any lost opportunities caused by a restriction on one discovery tool, and the potential for defendants to cross-examine plaintiff at trial.

14

Cahill has not persuasively argued otherwise. Instead, Cahill highlights the inequity in allowing plaintiffs' counsel unlimited time to depose the plaintiff while placing an "inflexible cap" on defense deposition. That argument is relevant to a facial challenge rather than an as-applied one. And, while it may have some logical appeal, the Legislature decided otherwise. The time disparity in this case does not render the statute unconstitutional as applied to Cahill. In enacting the statute, the Legislature considered—and rejected—the argument Cahill makes here and found the statute "provide[d] a reasonable limitation on deposition testimony in a narrow subset of cases based on documented and extremely critical health concerns." (Sen. Rules Com., *supra*, at p. 6.) The Legislature also noted that "[d]epositions are only one of the many tools available in discovery. For example, interrogatories can provide access to much of the same information defendants seek in extended depositions and provide it in a timelier, more efficient, and not excessively redundant manner that does not overly tax the health of a dying patient. If a plaintiff does not adequately respond to such interrogatories, there are mechanisms for defendants to compel further responses." (*Ibid.*)

We hold section 2025.295 sufficiently comports with principles of fairness and decency and reject Cahill's as-applied challenge to the statute.

## DISPOSITION

The petition for writ of mandate is denied. This decision will become final as to this court three days after its filing. (Cal. Rules of Court, rule 8.490(b)(2)(A).) Plaintiffs are entitled to recover costs. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

15

_____
Rodriguez, J.[*]

WE CONCUR:


_____
Needham, Acting P.J.


_____
Burns, J.


A162885


---

[*] Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16

## Cahill Construction Co. Inc. v. Superior Court (Alameda County)
(A162885)


Trial Court: Alameda County

Trial Judges:  Hon. Jo-Lynne Q. Lee and Hon. Michael Markman


Attorneys:

Hugo Parker, Edward R. Hugo, James C. Parker, Tina M. Glezakos, Alex G. Taheri, Bina Ghanaat for Petitioners.

Arkin Law Firm, Sharon J. Arkin; Keller, Fishback, & Jackson, Stephen M. Fishback, Daniel L. Keller for Real Parties in interest.