Filed 1/24/23  Tate v. Chavez CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| LIONEL TATE, SR.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>L. CHAVEZ, et al.,<br><br>    Defendants and Respondents. | A163330<br><br>(Solano County<br>Super. Ct. No. FCS045456) |

California state prisoner Lionel Tate, Sr. (Tate), sued the California Department of Corrections and Rehabilitation (Department) and individual correctional officers L. Chavez and L. Myers, alleging the Department improperly disposed of his personal property and retaliated against him after he filed a claim about his lost property.  The opposing parties filed competing motions for summary judgment, and the trial court granted defendants' motion and denied Tate's motion.  Tate filed a request for clarification, which was denied.  Tate appeals.[1]

---

[1] The register of actions in the clerk's transcript does not reflect that a judgment was entered following the court's order granting defendants' motion for summary judgment.  The parties do not raise appealability as an issue and instead treat the court's order as an appealable judgment.  While an order granting summary judgment is not itself an appealable order, we will exercise our discretion and construe the order granting summary judgment in

We conclude defendants made a prima facie showing that they were entitled to summary judgment and Tate failed to raise a triable issue of material fact. On appeal, Tate has failed to show any reversible error. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Under prison regulations, when an inmate is not allowed to possess an item of personal property, the inmate may choose to have the item (1) mailed at the inmate's expense to an address, "provided by the inmate," of an individual willing to accept the personal property, (2) returned to the sender at the inmate's expense, (3) donated to a charitable organization, (4) donated to the facility, or (5) disposed of according to facility procedures. (Cal. Code Regs., tit. 15 (15 CCR), § 3191(c).) The first two options are available only when the inmate has sufficient trust account funds. (*Id.,* § 3191(c)(1)–(2).)

In 2012, the Department sent Tate out of state to serve part of his prison sentence. At the out-of-state facility, Tate was allowed to purchase items that are not permitted in California state prisons. In 2014, the Department transferred Tate back to California State Prison Solano (CSP–Solano), and he was not allowed to keep many of the items he bought out of state. Tate chose to mail these items, but he never provided an address the items could be mailed to. The Department eventually disposed of Tate's prohibited items of property giving rise to this lawsuit.

this case as incorporating an appealable judgment. (See *Wilkin v. Community Hospital of the Monterey Peninsula (*2021) 71 Cal.App.5th 806, 819–820 ["In the interests of justice and to avoid delay, particularly considering the impacts the COVID-19 pandemic has had on court operations, we exercise our discretion and construe the order granting summary judgment as incorporating an appealable judgment"].)

*Tate's Allegations*

Representing himself, Tate initiated this action in superior court in June 2015 and filed his first amended complaint (the operative complaint) in August 2016. He made the following factual allegations.

When the Department returned Tate to California prison, it gave him chronos[2] stating he had 30 days to " 'select an authorized method of disposal' and have sufficient funds to accommodate [his] chosen method of disposal," but the Department then disposed of his property before the 30 days expired. The chronos did not expressly state that Tate had to provide an address where the property could be mailed.

Tate alleged Correctional Officer Chavez "filed false documents" stating she checked his inmate trust account, and he had insufficient funds to send his property to an address of his choice on certain dates when, in fact, he had sufficient funds at all times.

Tate's property from the out-of-state facility was issued to him in four segments; the deliveries were on June 27, August 20, August 22, and September 26, 2014, and his address book with the address to mail his property to was in the last delivery.

Tate alleged Chavez prematurely disposed of his property on three occasions: July 29, (property worth $679), September 16 ($227.90), and October 24, 2014 ($ 293.10).

After Tate filed this lawsuit on June 8, 2015, he received an administrative appeal decision in which the Department accepted

---

[2] A "chrono" is a form used to document information about inmates. (*In re Stoneroad* (2013) 215 Cal.App.4th 596, 606, fn. 4; 15 CCR § 3000 [definition of "General Chrono"].)

3

responsibility for the loss of his property and ordered CSP–Solano to compensate him.  CSP–Solano has not compensated him.

Tate also alleged the Department retaliated against him for filing his property claim by removing him from his job assignment.  He alleged the Department, through Correctional Officer Myers, "used a Department Operation Manual section that didn't exist" to remove Tate from his job assignment and then cited a section that was implemented after he was removed to justify its action.  A correctional officer told Tate, " 'Staff don't like inmates who file claims against staff.' "  Tate alleged removing him from his job assignment violated his right to equal protection of the law and his "right against reprisal for filing claims in court."

Tate brought a cause of action for negligence (checking the box for "General Negligence" on a Judicial Council form complaint) and sought compensatory damages of $1,200 for his lost personal property.   He also sought exemplary damages for "fraud" related to Chavez filing "false documents" about Tate having insufficient funds to mail his property and for "malice" and "oppression" related to his removal from his job assignment.

Tate attached a number of documents to his complaint, including a Government Claims Form showing he sought $1,200 for lost property in December 2014, a "CDCR Inmate Statement Report" listing his trust account balance from June 1, 2014, to January 9, 2015, and various administrative appeals he pursued with CSP–Solano in 2014, 2015, and 2016.

*Removal to Federal Court and Remand*

In October 2016, defendants removed the action to federal court based on Tate's retaliation allegations, which appeared to raise a federal constitutional claim.  The case was remanded to superior court in February 2017 after Tate disavowed any federal claims.

4

*Defendants' Motion for Summary Judgment*

In March 2020, defendants filed a motion for summary judgment and supporting evidence, including declarations from (1) defendant Chavez, (2) the Acting Chief of the Department's Office of Appeals A. Vasquez, and (3) CSP–Solano litigation coordinator N. Difuntorum. The motion also relied on Tate's deposition testimony.[3]

<u>Evidence</u>

Chavez stated she had worked in Receiving and Release (R&R) at CSP–Solano, where her duties included issuing property to arriving inmates, logging their personal property, and confiscating personal property deemed to be contraband, all of which "was always done in front of the inmate." She described her interactions with Tate regarding three separate deliveries of prohibited items to Tate after his transfer to CSP–Solano in 2014.

First, on June 27, 2014, Chavez reported on a Form 128–B (that is, a chrono (*In re Cabrera* (2013) 216 Cal.App.4th 1522, 1526, fn. 4)) that she had spoken to Tate about an X-Box 360 game system, two controllers, an X-Box 360 "power-pack," an RCA television, a remote control, and related cables. Chavez told Tate this property was not permitted and he had to "select a method of disposal within the allotted time frame." Her handwritten notes on the chrono indicated that Tate chose to mail his property, but he did not provide an address. More than 30 days later, on July 29, 2014, Chavez prepared a chrono informing Tate, "Your refusal to provide funds/address and/or other means of disposal within the thirty (30) day notice . . . provided to you on 6/27/14 necessitated R&R to confiscate and dispose of this property."

---

[3] Tate apparently did not request the reporter's transcript of his deposition as part of the clerk's transcript on appeal.

5

Second, on August 22, 2014, Chavez prepared a chrono regarding a Casio keyboard and keyboard cover advising Tate the property was not permitted. Chavez told Tate he had to provide an address to mail the property to, but her notes indicated he did not provide an address. On September 16, 2014 (before 30 days had passed from the August 22 chrono), Chavez prepared a chrono that informed Tate his keyboard and cover were disposed of because of his "refusal to provide funds/address and/or other means of disposal within the thirty (30) day notice . . . provided to you on 8/22/14 . . . ." In her declaration, however, Chavez stated that it was later determined the keyboard and cover "had not actually been disposed of yet." (As will be seen, after Tate filed an administrative appeal about the keyboard and cover, the items were discovered, and Tate was given another 30 days to provide an address where they could be mailed.) In the August 22 chrono, Chavez noted that she had checked Tate's trust account and, according to the preprinted form, he had "insufficient funds to pay for the mail out of unauthorized items" on (as handwritten by Chavez) "8/22," "9/02," "9/10," and "9/16."

Third, on September 26, 2014, Chavez prepared a chrono regarding 13 CD's, 6 cassettes tapes, a tape cleaner, a pair of shorts, and a pair of gloves. The chrono advised Tate the property was not permitted. Again, Chavez told Tate he had to provide an address to mail the property to, but her notes indicated he did not provide an address. Before 30 days had passed, on Friday, October 24, 2014, Chavez prepared a chrono informing Tate that his property "was disposed of" on "10/24/14" because of his "refusal to provide funds/address and/or other means of disposal within the thirty (30) day notice . . . provided to you on 9/26/14 . . . ." According to Chavez's declaration, however, the property was not actually disposed of on October 24; Chavez

6

stated that when she wrote the chrono, she knew "Tate would not *receive* this form until the following week" (italics added); and "if Tate had provided an address on October 25 or 26, the property would have been mailed to the address of his choice." In the October 24 chrono, Chavez noted that she had checked Tate's trust account and he had "insufficient funds to pay for the mail out of unauthorized items" on "9/26," "10/9," "10/16," and "10/24."[4]

Chavez's declaration concluded, "At no time did Plaintiff Tate ever provide an address to have his confiscated property mailed to. Accordingly, the confiscated items were all disposed of pursuant to" Department and CSP–Solano policy.

Acting Chief of the Office of Appeals Vasquez's declaration described the administrative appeal process, or grievance procedure, available to inmates.[5] Tate's administrative appeal related to the Department's disposal of his keyboard and cover was designated institutional log number SOL-14-02433. In that appeal, Tate sought $227.90 as the replacement cost for his keyboard. A copy of the decision letter dated March 24, 2015, denying Tate's third and final level appeal on the matter was attached as an exhibit to Vasquez's declaration.

---

[4] Copies of the chronos referenced were also attached as exhibits to Chavez's declaration.

[5] According to Vasquez, in 2014, the process consisted of three formal levels of appeal, and failure to pursue a grievance through the third and final level constituted failure to exhaust administrative remedies (and see, e.g., *Upshaw v. Superior Court* (2018) 22 Cal.App.5th 489, 505 [prison grievance process must be exhausted under the rule of exhaustion of administrative remedies]). Vasquez stated that a review of the Office of Appeals' records showed Tate filed four third-level property-related administrative appeals that "concerned any of the issues raised in Plaintiff's [First] Amended Complaint," and they were all denied at the third level.

The third level appeal decision letter recounted that Tate was interviewed about his appeal on November 7 and again on December 8, 2014. At the December 8 interview, Correctional Lieutenant Martinez informed Tate that he had recovered Tate's keyboard and cover and explained that the property was unauthorized. Tate was then provided an additional 30 days to mail out the property, but Tate said he did not want to mail the keyboard and, instead, wanted to wait for the result of his previous appeal asking for the keyboard "to be 'grandfathered' into his allowable property." According to the letter, that previous appeal to "grandfather" the keyboard (so Tate could keep it in prison) was denied at the second level. The third level appeal decision letter in appeal SOL-14-02433 explained Tate's appeal seeking compensation for his keyboard was denied because his "property was recovered and he was afforded an opportunity to render a disposal disposition: therefore, he is not entitled to monetary compensation."

CSP–Solano litigation coordinator Difuntorum's declaration concerned mailing addresses Tate knew or had access to by June 2014. Difuntorum explained the Department maintains emergency contact information for each inmate, which is provided by the inmate and is updated annually by the inmate. At any time, an inmate may request or update his emergency contact information by asking his correctional counselor. Tate's prison records showed he provided the Department a Stockton address for his son in February 2014, and he provided a telephone number and San Diego address for his sister in May 2014.

Defendants' Arguments

As to Tate's negligence claim, defendants argued the cause of action failed because, assuming they owed him a duty of care, defendant did not

breach such duty, and Tate could not show defendants were the cause of any of his alleged harms.

Tate alleged negligence in Chavez disposing of his property prematurely—that is, before he had a full 30 days to provide an address— three times, on July 29, September 16, and October 24, 2014. But Chavez's declaration showed Tate was given 30 days or more to provide an address on the first and third occasions. And the third level appeal decision letter in appeal SOL-14-02433 showed that Tate was given at least 30 days to provide an address for mailing the keyboard and cover after it was discovered that they had not been disposed of (as had been erroneously reported in Chavez's September 16, 2014, chrono). Accordingly, defendants argued, they did not breach any duty they may have owed to Tate in dealing with Tate's prohibited personal property.

Tate alleged he did not receive his address book until September 26, 2014. But, defendants asserted, there was no evidence Tate ever submitted a form 22 or form 602[6] requesting additional time to provide an address. Further, the evidence showed Tate had his address book in time to provide an address for the second (keyboard and cover) and third (CD's and other items) sets of impermissible items.[7] In any event, defendants argued, at all relevant times, Tate "had the ability to acquire a valid address but made no attempts to do so." Defendants noted that Tate could have requested the mailing

---

[6] In 2014 and 2015, form 22 was "an informal method to resolve inmate issues" (*Foster v. Sexton* (2021) 61 Cal.App.5th 998, 1008), and an inmate pursing an administrative appeal was required to use a form 602 (*id.* at p. 1009, fn. 2). (See former 15 CCR §§ 3086, 3084.2.)

[7] Tate had until at least October 26, 2014, to provide an address for the CD's and other items, and he had until January 2015 to provide an address for the keyboard.

9

address of either his son or his sister since those addresses were on file as his emergency contacts before June 2014. In addition, Tate admitted that at the relevant times, he knew his mother's mailing address and he had telephone conversations with another sister (and presumably, he could ask for an address in these conversations).[8] Thus, defendants asserted, Tate's own failure to make any efforts to provide or acquire a mailing address "was the superseding cause of his own harm."

As to any fraud or equal protection claims Tate may have alleged, defendants argued such causes of action failed because he did not comply with the Government Claims Act (Gov. Code, § 810 et seq.). The Government Claim Act "establishes certain conditions precedent to the filing of a lawsuit against a public entity," including filing a timely claim for money or damages with the public entity. (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1237; Gov. Code, § 911.2, subd. (a) [a claim for injury to personal property must be presented not later than six months after the accrual of the claim].) Defendant argued Tate "never submitted claims for fraud and equal protection to the Government Claims Program," and failure to comply with this requirement was fatal to his causes of action. (See *Nguyen v. Los Angeles County Harbor/UCLA Medical Center* (1992) 8 Cal.App.4th 729, 732 ["Failure to comply with the mandatory requirements [of the Government Claims Act] is fatal to the cause of action"].)

As to any claim related to Tate's removal from his job assignment, defendants argued such claims failed because "there is no cause of action for damages based on retaliation or equal-protection violations under the California Constitution."

---

[8] Here, defendants cited Tate's deposition transcript.

*Tate's Opposition and Motion for Summary Judgment*

In April 2020, Tate filed a motion for summary judgment and opposition to defendants' motion for summary judgment. Opposing defendants' motion, Tate asserted they had "perpetuated a fraud upon this court with false and deceiving filings and declarations." Tate argued defendants were attempting "to deceive this court by claiming [he] failed to provide an address to mail his property to" without acknowledging the reason he was unable to provide an address. He argued he did what was required of him under the chrono Chavez gave him June 27, 2014, in that he (1) selected an authorized method of disposal that day, which was "send home" and (2) had sufficient funds to pay for the mailing. And he argued, he was prevented from giving an address to mail his property to because "Chavez disposed of [his] property before issuing [him] his property that had the address that [he] would have mailed his property to."

Tate argued the chronos issued by Chavez said "nothing about [Tate] providing an address to mail the property to within 30 days." He suggested Chavez "could have written on the [chrono] 'You have 30 days from the day of this chrono to provide an address to mail the property to.' " He reiterated that Chavez had written in the chronos that she reviewed his trust account and found an insufficient balance on multiple occasions, but this was not true; he always had sufficient funds.[9] (Defendants did not dispute that he had sufficient funds to pay for mailing his property at all relevant times.) Finally, Tate argued that Chavez's statement in her declaration that the CD's and other items were not disposed of on October 24, 2014, was contradicted

---

[9] Tate cited a third level appeal decision letter with log number OOA-14-06453, dated June 11, 2015, which stated that a review of his trust account statements showed Tate "had more than sufficient funds to mail his property on all the dates listed on the [chrono] authored by CO Chavez."

11

by the chrono in which Chavez documented that the "unauthorized property was disposed of on 10/24/14."

As to the evidence that at all relevant times he knew or had access to the addresses of his mother, son, and sister, Tate asserted none of these was the address he would have mailed his property to. Rather, he claimed he would have sent his property to his ex-girlfriend, and neither his mother, nor his son, nor his sister knew this ex-girlfriend's address or telephone number.

Tate argued, "The only way [his] property could justifiably be disposed of, based on the chronos issued to Plaintiff on 6-27-14, 8-22,14 and 9-26-14, is if Plaintiff ha[d] insufficient funds to accommodate the cost to mail the property to 'an address of an individual willing to accept the personal property' [citing 15 CCR § 3191(c)(1)]. Defendant L. Chavez fraudulently made such claim."

Tate disputed defendants' assertion that he never requested additional time to provide an address, but he cited evidence that indicated only that he requested his property be held until his appeal regarding "grandfathering" his property was completed. Tate did not present any evidence showing he asked for additional time to obtain a mailing address.

In support of his own motion for summary judgment, Tate argued he was entitled to judgment on his negligence claim because the Department "admit[ted] liability" in the third level appeal decision in his administrative appeal with log number OOA-14-06453. He seemed to disavow any separate causes of action for fraud, retaliation, or equal protection violation, asserting he previously "made it clear that any claim of fraud, retaliation, or equal protection violation was for exemplary damages (punitive damages) on the

negligence claim. The exemplary damages is not an independent cause of action."[10]

Tate did not file a separate statement of undisputed facts in support of his motion for summary judgment as required by subdivision (b)(1) of Code of Civil Procedure[11] section 437c; nor did he file a response to defendants' separate statement of undisputed facts as required by section 437c, subdivision (b)(3).

*Defendants' Reply in Support of Summary Judgment*

In their reply, defendants noted that in his opposition, Tate did not dispute either that he was informed numerous times that he needed to provide a mailing address where his prohibited property could be sent to or that he knew he was supposed to provide a mailing address. Tate did not dispute that "he made no attempts or requests to get" a mailing address for his ex-girlfriend. Nor did Tate dispute defendants' arguments that any fraud or equal protection claim failed because he did not comply with the Government Claims Act and any retaliation claim failed under California law.

*Tentative Rulings, Tate's Reply, and the Trial Court's Order on the Summary Judgment Motions*

The trial court issued a tentative ruling granting defendants' motion for summary judgment and denying Tate's motion for summary judgment. The tentative ruling indicated that Tate's filings did not comply with the statutory requirements that summary judgment motions and oppositions include separate statements of facts supported by evidence and that Tate had

---

[10] In any event, Tate made no affirmative argument that he was entitled to summary judgment on any cause of action other than negligence.

[11] Further undesignated statutory references are to the Code of Civil Procedure.

13

not submitted admissible evidence in support of his motion or in opposition to defendants' motion.

At a hearing on July 13, 2020, the parties appeared, and the court noted it had not received Tate's reply to defendants' opposition to his summary judgment motion and that Tate indicated he had been unable to use the law library "since the [p]andemic." The court continued the matter to July 30, 2020.

On July 16, 2020, Tate's reply was filed with the court. In his reply, Tate asserted defendants' opposition was served late and prevented him from timely filing a reply. He accused defendants of destroying or delaying his outgoing mail to prevent the court from considering his filings. He repeated that Chavez falsely stated in chronos that his trust account had insufficient funds. He explained why the relatives he was in contact with could not receive his mail (they "had more things to worry about than having me send my property to them to add to their worries"). He accused the Attorney General of committing fraud in the opposition to his motion.

The trial court issued another tentative ruling similar to the first one granting defendants' motion for summary judgment and denying Tate's motion. On July 30, 2020, the parties appeared, the trial court heard oral argument, and the matter was taken under submission.

On September 25, 2020, the trial court filed its written order ruling on the summary judgment motions. The court adopted its tentative ruling. It noted Tate failed to comply, or attempt to comply, with the requirements that he provide (1) a separate statement of undisputed material facts supporting his own motion with reference to supporting evidence (§ 437c, subds. (b)(1) and (b)(2)) in opposition to defendants' motion, a separate statement responding to the movants' material facts, indicating whether he "agrees or

14

disagrees that those facts are undisputed" and, for disputed facts, "reference to the supporting evidence" (*id*., subd. (b)(3)). The court stated that failure to comply with these requirements constituted sufficient ground for denying Tate's motion for summary judgment (*id*., subd. (b)(1)) and granting defendants' motion (*id*., subd. (b)(3)).

The court further observed, "Plaintiff has not submitted any admissible evidence in support of his motion or in opposition to Defendants' motion. Plaintiff does not present any affidavits, declarations, admissions, answers to interrogatives, depositions, or matters for which judicial notice has been sought. (. . . § 437c, subds. (b)(1), (b)(2).) The court did review and consider Plaintiff's Reply to Defendants' Opposition to his motion filed on July 16, 2020, after the initial hearing date set for the motion. Although it is executed under penalty of perjury such that parts of it at least can be considered an affidavit or declaration, most of it is argumentative and, substantively, it fails to dispute material facts Defendants cite in support of their motion, or establish undisputed material facts in support of Plaintiff's motion."

*Subsequent Procedural History*

On October 13, 2020, Tate filed a "Request for Clarification" regarding the court's order on summary judgment. Tate wrote that the court's order did not mention his claim that defendants delayed or destroyed his mail and did not address defendants' allegedly untimely filing. Tate admitted his own filings were "not in the format required by this court" but asserted he "has disputed most of if not all of the facts that defendants claim are undisputed." Tate requested that the court "state[] the material facts cited by defendants that plaintiff has not disputed . . . ."

Defendants opposed Tate's request, which they characterized as a motion for reconsideration. They argued Tate had not identified any new or

15

different facts, circumstances, or law as required for a motion for reconsideration under section 1008.

On March 9, 2021, the trial court issued an order to show cause why the case should not be dismissed for failure to bring the matter to trial within three years of its commencement pursuant to section 583.420, subdivision (a)(1) and (2)(A).

On May 5, 2021, Tate filed a response to the order to show cause and requested appointment of counsel. In his response, Tate accused defendants of retaliating against him for filing this case by taking him "on the 'Freddy Gray experience' " after a surgery, refusing to allow him in groups recommended by the Board of Prison terms so he could qualify for elderly parole, and "put[ting] an illegal hold on part of [his] funds." He requested the court appoint him counsel because defendants were not allowing him adequate use of the law library and he lacked funds to hire an attorney. Tate argued the Covid-19 pandemic and "being constantly moved, isolated, and quarantined," along the with defendants' "numerous instances of retaliation" caused delay in his pursuit of his lawsuit.

On June 7, 2021, the trial court held a hearing on Tate's "Request for Clarification" and the court's order to show cause. In a written order filed July 15, 3021, the court denied Tate's request for clarification, finding its order of September 25, 2020, "was sufficient to provide Plaintiff with all the requisite information needed," and discharged its order to show cause.

## DISCUSSION

### A. *Summary Judgment*

#### 1. Legal Principles and Standard of Review

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that

16

the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) "[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . . There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fns. omitted (*Aguilar*).)

"[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

We generally review a court's decision on a motion for summary judgment de novo (*Korchemny v. Piterman* (2021) 68 Cal.App.5th 1032, 1042), but we review a ruling granting or denying summary judgment based on failure to comply with the separate statement requirements of section 437c, subdivision (b), for abuse of discretion (*Rush v. White Corp.* (2017) 13 Cal.App.5th 1086, 1097).

"The appellant has the burden of showing error occurred. (See *Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 443, *Frank and Freedus v. Allstate Ins. Co.* (1996) 45 Cal.App.4th 461, 474.) An appellant must support his argument in the briefs by appropriate references to the record, which includes providing exact page citation. (Cal. Rules of Court, rule 14(a)(1)(C); *Bernard v. Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203, 1205.) 'An appellate court is not required to search the record to

17

determine whether or not [it] supports appellants' claim of error. It is the duty of counsel to refer the reviewing court to the portions of the record which support appellants' position.' " (*Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1140–1141.)

"We treat a party who represents himself on appeal as we would any other party or attorney." (*Denny v. Arntz* (2020) 55 Cal.App.5th 914, 920.)

2.      Analysis

Subdivision (b)(1) of section 437c provides that a motion for summary judgment "shall be supported by affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken. The supporting papers *shall include a separate statement* setting forth plainly and concisely all material facts that the moving party contends are undisputed. *Each of the material facts stated shall be followed by a reference to the supporting evidence.*" (Italics added.) "The failure to comply with this requirement of a separate statement may in the court's discretion constitute a sufficient ground for denying the motion." (*Ibid.*)

Subdivision (b)(3) of section 437c requires that the opposition to a summary judgment motion "include a separate statement that responds to each of the material facts contended by the moving party to be undisputed, indicating if the opposing party agrees or disagrees that those facts are undisputed. The statement also shall set forth plainly and concisely any other material facts the opposing party contends are disputed. *Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence.*" (Italics added.) Again, the "[f]ailure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion." (*Ibid.*)

18

" 'The separate statement is not merely a technical requirement, it is an indispensable part of the summary judgment or adjudication process.' " (*Kojababian v. Genuine Home Loans, Inc*. (2009) 174 Cal.App.4th 408, 415 (*Kojababian*).) "Its purpose is to ease the trial court's burden and put the moving party on notice of the evidence which is disputed by respondent." (*Id.* at p. 419.)

Tate contends the trial court abused its discretion in granting defendants' summary judgment motion and denying his summary judgment motion based on Tate's failure to file separate statements of fact in compliance with section 437c, subdivisions (b)(1) and (b)(3). He relies on *Kalivas v. Barry Controls Corp.* (1996) 49 Cal.App.4th 1152, 1161, in which the court observed, "An order based upon a *curable* procedural defect (such as the failure to file a separate statement), which effectively results in a judgment against a party, is an abuse of discretion." (Italics added.) Instead, "the proper response in most instances, if the trial court is not prepared to address the merits of the motion in light of the deficient separate statement, is to give the opposing party an opportunity to file a proper separate statement rather than entering judgment against that party based on its procedural error." (*Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1211.)

On the other hand, when a "plaintiff's noncompliance with section 437c, subdivision (b)(3) [i]s not the result of a procedural mistake, but rather [i]s based upon a lack of admissible evidence in opposition to the motion," allowing additional time to file a separate st atement is not required because the defect is not readily curable. (*Kojababian, supra,* 174 Cal.App.4th at p. 415.) Thus, in *Kojababian*, the Court of Appeal concluded the trial court acted within its discretion in granting the defendants' summary judgment

19

without affording the plaintiff additional time to file an opposing separate statement where (1) the defendants made a prima facie showing in support of their motion and (2) the plaintiff's failure to file a separate statement was not merely a curable procedural defect; it was the result of lack of evidence to oppose the motion. (*Id.* at p. 420.)

Defendants argue there was no abuse of discretion here because they made a prima facie showing in support of their motion and, in his opposition, Tate failed to raise a triable issue of material fact. We agree with defendants.

To succeed in his negligence claim, Tate had to show defendants owed him a legal duty to use due care, they breached their legal duty, and the breach was the proximate or legal cause of his injury. (See *Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP* (2014) 59 Cal.4th 568, 573 [defining actionable negligence].)

Tate's negligence claim is premised on the factual allegations that (1) on three occasions, Chavez did not give him 30 days to provide an address before disposing of his personal property, (2) the chronos regarding his prohibited items did not state Tate had to provide a mailing address, (3) he did not have access to an address because his address book was only delivered on September 26, 2014, and (4) Chavez committed fraud by writing that he had insufficient funds to mail his property when he had sufficient funds.

Defendants' evidence demonstrated that, contrary to his allegations, Tate was given 30 days to provide a mailing address as to each of the three batches of prohibited property. Thus, assuming defendants had a duty to give Tate 30 days to provide an address, Tate could not establish defendants breached that duty.

20

As to Tate's complaint that the chronos did not explicitly instruct him to provide an address, Chavez's declaration established she "spoke with Tate and informed him that he needed to provide an address to mail the property to," and Tate never claimed he did not know he was supposed to provide a mailing address. Thus, assuming defendants had a duty to inform him he needed to provide an address where his property could be mailed to, defendants met that duty. (And, to the extent defendants should have given him written notice, the lack of written notice was not the cause of the disposal of his property since Tate knew he was supposed to provide an address.)

As to the timing of the delivery of Tate's address book, defendants noted Tate never asked for additional time to provide a mailing address, and they presented evidence that Tate knew or had access to the addresses of his mother, sister, and son. Tate himself asserted he selected "send home" as his method of disposal on June 27, 2014, and he offered no evidence that he ever asked for additional time to provide a mailing address. He also admittedly had access to his address book before the second and third batches of prohibited items were disposed of, but he did not provide an address. Tate does not explain what duty defendants may have breached in respect to the address book. Moreover, given that his address book was delivered to him on September 26, 2014, and he never provided a mailing address after that, Tate cannot show that the prior absence of his address book was the cause of his failure to provide a mailing address. As defendants argue, Tate's failure to obtain and provide a mailing address when he was able to do so "was the but-for and proximate cause of his loss."

Finally, while it is understandable Tate would be upset that Chavez mistakenly reported on more than one occasion that he had insufficient funds

to pay for the mailing of his property, he offers no evidence that these misstatements caused him injury. The chronos all explained his property was disposed of because he refused to provide funds or an address; they did *not* say his items were disposed of because he lacked sufficient funds. Chavez stated that if Tate had provided an address, his property would been mailed to the address, but at no time did he provide a mailing address. Tate has never offered any evidence that Chavez's misstatements (or what he calls "fraud") were the cause of the loss of his property.

In sum, defendants' summary judgment motion and supporting evidence made a prima facie showing that Tate's negligence claim failed as a matter of law, and Tate failed to rebut their showing with evidence raising a triable issue of material fact.[12] On appeal, Tate fails to identify evidence that he would have cited to raise a triable issue of material fact had he been given further opportunity to comply with the separate statement requirements of section 437c, subdivision (b)(1) and (3). On this record, it appears Tate's failure to file a separate statement was not merely a curable procedural defect; it was the result of lack of evidence to oppose the motion. As a result, it was not an abuse of discretion for the trial court to grant defendants'

---

[12] Defendant also made a prima facie showing that Tate could not establish claims of fraud, violation of equal protection, or retaliation under state law. Defendants argued any fraud or equal protection claim was barred because Tate did not comply with the Government Claims Act. (See *Willis v. City of Carlsbad* (2020) 48 Cal.App.5th 1104, 1119 [with certain exceptions, "the timely filing of a written government claim is an *element* that a plaintiff is required to prove in order to prevail on his or her cause of action"].) They argued Tate could not bring a claim of retaliation based on California law. (See *MHC Financing Limited Partnership Two v. City of Santee* (2010) 182 Cal.App.4th 1169, 1183–1184 [ a claim of violation of the state constitutional right to petition does not provide a right to recover damages].) In his opposition, Tate did not respond to these arguments. Instead, he indicated his only cause of action was for negligence.

summary judgment motion.  (See *Kojababian, supra,* 174 Cal.App.4th at p. 420.)[13]

B.    *Remaining Issues*

Tate appeals the denial of his request for clarification but does not show the trial court erred.  He accuses the trial judge of bias, asserting bias "is clear from the record in this case," but the record does not demonstrate bias.  Tate argues the defendants filed or served some of their papers late in violation of section 1013, but he does not explain how such alleged violations resulted in reversible trial error.  He accuses defendants of "fraud in [their] filings in the superior court," but the omissions he describes do not constitute fraud.

"An appellate court is not required to examine undeveloped claims, nor to make arguments for parties."  (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)  Further, "the appellant bears the duty of spelling out in his or her brief exactly how [an alleged] error caused a miscarriage of justice."  (*Ibid.*)  In this case, Tate has not demonstrated a miscarriage of justice.

## DISPOSITION

The judgment is affirmed.

---

[13] Alternatively, even if the trial court abused its discretion and Tate should have been afforded an opportunity to file compliant separate statements, Tate has not shown that the error was prejudicial since he has not identified evidence that raises a triable issue of material fact.  (See *Batarse v. Service Employees Internat. Union, Local 1000* (2012) 209 Cal.App.4th 820, 833 [assuming the trial court abused its discretion in granting a motion for summary judgment without affording the opposing party an opportunity to correct defects in his separate statement, the appellate court "would not reverse the judgment, because any error was not prejudicial"].)

_____

Miller, J.

WE CONCUR:

_____

Stewart, P.J.

_____

Richman, J.

A163330, *Tate v. Chavez, et al.*