Filed 12/3/25  Hand v. Superior Court CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| HEATHER M. HAND,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF MENDOCINO COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | A173974<br><br>(Mendocino County Super. Ct. No. 23CR02721) |

After she was charged with transporting heroin in violation of Health and Safety Code section 11352, subdivision (a), Heather M. Hand unsuccessfully applied for pretrial mental health diversion under Penal Code section 1001.36.[1]  She now seeks review, in a petition for a writ of mandate, of the trial court's determination that she was ineligible for diversion.  Based on our preliminary review of the petition, we granted a stay of the trial court proceedings and issued an alternative writ of mandate, affording the trial court the opportunity to set aside its order, which would have mooted the petition.  (See Code Civ. Proc., § 1087.)  The trial court having declined to do so, we now issue an

---

[1] Undesignated statutory references are to the Penal Code.

1

opinion holding that the court erred in concluding Hand was ineligible for diversion.

In the trial court, Hand also filed a challenge to the trial court judge under Code of Civil Procedure section 170.6 based on alleged prejudice. Although Hand's writ petition additionally seeks review from that ruling, we deny that portion of her petition as untimely.

## BACKGROUND

### A.

In August 2024, Hand was charged with one count of transporting a controlled substance, heroin. (Health & Saf. Code, § 11352, subd. (a)). According to the police report, on the day she was arrested, August 27, 2023, Hand had been driving a car that police pulled over based on an expired registration.

Because Hand's passenger indicated he was on parole, an officer searched the area of the car reachable from the passenger seat and found a plastic bag containing a large quantity of a substance later confirmed to be heroin. The bag was deformed and had been melted in places, which indicated that someone had ripped off pieces of the bag and used a lighter to seal the hole. Police also found a working digital scale with the heroin.

Hand "spontaneously" volunteered to the police that the heroin belonged to her, and that her passenger did not know that the drugs were in the car. Police subsequently found a methamphetamine smoking pipe in a bag slung across Hand's torso.

After being read her rights under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*), Hand again volunteered that the drugs belonged to her and advised the police that she had some drugs on her person, a small baggie containing heroin. Hand told the police that the drugs "just kind of fell into her lap and she

2

was just trying to make some money." Hand said that "right now she did not have a job and was struggling financially." In addition, she volunteered that she intended to sell the heroin for $50 per gram using "tear-offs," which according to the police report confirmed that the bag containing the heroin "had been torn and burned, . . . a common way to package drugs without needing baggies."

When the police later weighed the large bag of heroin, they determined the heroin weighed 73.55 grams.

## B.

Under section 1001.36, pretrial diversion allows a defendant to undergo mental health treatment while criminal charges are either temporarily or permanently postponed.[2] (§ 1001.36, subds. (a), (f)(1).) The statute aims to meet the "unique mental health treatment and support needs of individuals with mental disorders," to alleviate their entry and reentry into the criminal justice system while accounting for public safety, and to allow local development and implementation of diversion programs for individuals with mental disorders. (§ 1001.35, subds. (a)-(c); *People v. Frahs* (2020) 9 Cal.5th 618, 626, 631, 632.)

A trial court may grant pretrial diversion if the defendant meets specified eligibility criteria and is suitable for diversion. (§ 1001.36, subd. (a).) To be eligible, the defendant must have been diagnosed with a mental disorder within the last five years, and the mental disorder must have been "a significant factor in the commission of the charged offense." (§ 1001.36, subds. (b)(1)-(2).)

---

[2] Criminal proceedings may be reinstated if the defendant is charged with another crime committed during the diversion period, performs unsatisfactorily in the treatment program, or in other specified circumstances. (§ 1001.36, subd. (g).)

Earlier versions of the statute required that the defendant establish to the satisfaction of the court that the defendant suffered from a mental disorder that was a significant factor in the offense. (See *Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 891 (*Sarmiento*).) In 2022, however, Senate Bill No. 1223 (2021-2022 Reg. Sess.) modified the statute to mandate that once the defendant has been diagnosed with a mental disorder within the last five years, the court shall presume that the disorder was causally connected to the offense. (See Stats. 2022, ch. 735, § 1; *Sarmiento*, at p. 891.) Section 1001.36, subdivision (b)(2), now provides: "If the defendant has been diagnosed with a mental disorder, the court shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." The trial court may consider all relevant, credible evidence, including police reports, medical records and reports, and "evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense." (§ 1001.36, subd. (b)(2).)

If a defendant is eligible, the trial court must consider whether the defendant is suitable for diversion based on enumerated criteria. (§ 1001.36, subd. (c).)

## C.

In support of her application for mental health diversion, Hand submitted a March 29, 2025 evaluation report by Carmen Harris, a Licensed Clinical Social Worker. Based on her interview with Hand and review of the police records and information, Harris diagnosed Hand with amphetamine-stimulant use disorder and post traumatic stress disorder.

The evaluation report recounted Hand's statement that her parents abused substances and that she was " 'born addicted to

4

drugs' " as a result.  Hand described herself as a " 'functional addict,' " reporting that she uses methamphetamine every day and that she only about sleeps eight hours each week.  Hand's drug of choice is methamphetamine, not heroin.

Hand uses drugs to " 'numb her [history of] traumatic experiences,' " which include having been molested as a child and having to testify about it.  She experiences nightmares, avoidance of the location of her traumas, poor sleep, anger, hypervigilance, stress, and anxiety.

Harris opined that Hand's mental disorder was a significant factor in the charged offense, noting that she "uses substances as she was born 'addicted' and had traumatic experiences as a child."  Further, Hand's use of methamphetamine "increases poor judgment, poor impulse control, and poor sleep," in addition to paranoia.  And treatment of Hand's substance abuse would "increase her financial stability" and enable her to obtain employment and housing.

In support of its opposition to the diversion application, the prosecution submitted the police report.

In denying her diversion application, the trial court accepted the diagnoses in Harris's evaluation report but observed that "there was no evidence . . . that at the time of this offense, [Hand] had used or was under the influence of methamphetamine or that methamphetamine played any part in her decision to possess for sale the heroin" found by the police.  According to the court, "[n]o facts show that" Hand's substance abuse disorder "was related to this offense."  Ultimately, the court concluded that the prosecution had presented clear and convincing evidence rebutting the statutory presumption that Hand's mental disorder played a significant role in the charged offense.

5

Separately, the trial court also denied Hand's Code of Civil Procedure section 170.6 challenge, reasoning that the challenge was "untimely."

## DISCUSSION

### A.

### 1.

As an initial matter, the People argue that Hand's petition was untimely filed as to both the mental health diversion ruling and the Code of Civil Procedure section 170.6 challenge. (See *Upshaw v. Superior Court* (2018) 22 Cal.App.5th 489, 497, fn. 4 ["[I]t is a writ petitioner's burden to present a procedurally and substantively adequate writ petition."].) Although we agree with the People that the petition was untimely as to the Code of Civil Procedure section 170.6 challenge, we exercise our discretion to consider Hand's petition as to the mental health diversion order.

With respect to the Code of Civil Procedure section 170.6 challenge, Code of Civil Procedure section 170.3, subdivision (d), requires such a writ petition to be filed within 10 days after service of written notice of entry of the court's order (extended under Code of Civil Procedure section 1013, subdivision (a) if served by mail). Our record does not include evidence of the date of service of the trial court's order denying the challenge, however. We issued a briefing order observing that "the petition neither addresses nor demonstrates that the petition was timely filed under [Code of Civil Procedure] section 170.3, subdivision (d)." In her reply, Hand declined to address this issue, instead stating only that "[t]he petitioner will submit on this issue." Because Hand has not met her burden of establishing that her petition is timely as to the Code of Civil Procedure section 170.6 challenge, we deny that portion of her petition.

We reach a contrary conclusion with respect to Hand's challenge to the trial court's May 22, 2025, denial of her

6

application for mental health diversion.  Where, as here, a writ petition was filed more than 60 days after the challenged ruling, an appellate court should deny the petition as untimely unless there are " ' "extraordinary circumstances" justifying the delay.' " (See *Volkswagen of America, Inc. v. Superior Court* (2001) 94 Cal.App.4th 695, 701.)  Hand's verified petition alleges that the 17-day delay was due to extraordinary short-staffing in the Mendocino County Public Defender's Office.  As a result of a decline in the number of attorneys, medical leave, and another attorney's pre-scheduled three-week vacation, Hand's counsel was responsible for covering the juvenile and civil mental health commitment dockets, arraignment duties, and a co-worker's case load, in addition to counsel's own existing felony case load, during the 60-day period at issue.  Under these circumstances, we will exercise our discretion to deem the petition timely.  (*Volkswagen*, at p. 701.)

## 2.

Further, we agree with Hand that it is appropriate to review the trial court's denial of pretrial diversion by extraordinary writ.

A writ of mandate is appropriate in all cases in which there is otherwise no "plain, speedy, and adequate remedy, in the ordinary course of law." (Code Civ. Proc., § 1086; *Gomez v. Superior Court* (2025) 113 Cal.App.5th 671, 686 (*Gomez*).)  Although mandamus review is not available to compel an exercise of discretion, it is appropriate to correct an abuse of discretion, as Hand alleges happened here.  (See *Gomez*, at p. 686.)

Absent writ review, Hand would have to wait to obtain review in an appeal from final judgment.  (See *Gomez*, 113 Cal.App.5th at p. 686.)  This would potentially delay needed mental health treatment and subject Hand to a trial that may be unnecessary if she is found eligible and suitable for diversion.

7

(See *id.* at p. 687.)  Requiring her to wait to obtain review would undermine the goals of section 1001.36 while resulting in an inefficient use of the court's (and the parties') resources.  (*See ibid*.)  We therefore conclude that writ review is appropriate.  (*See ibid.*)

**B.**

On the merits, Hand asserts that the trial court erred in finding her ineligible for diversion.  We agree.

Once a defendant has been diagnosed with a mental disorder, Penal Code section 1001.36, subdivision (b)(2), shifts the burden of proof to the prosecution.  (See *People v. Harlow* (2025) 113 Cal.App.5th 485, 491 (*Harlow*); see also Evid. Code, § 606 ["The effect of a presumption affecting the burden of proof is to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact."].)  Under the Penal Code section 1001.36, subdivision (b)(2) presumption, the court is *required* to find a causal connection between the defendant's mental disorder and the alleged offense *unless* the prosecution proves the nonexistence of a causal relationship by clear and convincing evidence.  (See *Sarmiento*, *supra*, 98 Cal.App.5th at p. 891; see also Evid. Code, § 600, subd. (a) ["A presumption is an assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established in the action."].)

We apply the abuse of discretion standard to the court's denial of diversion, and we review fact findings for substantial evidence, which includes circumstantial evidence and reasonable inferences drawn from that evidence.  (See *Gomez, supra*, 113 Cal.App.5th at pp. 687-688; *People v. Grant* (2020) 57 Cal.App.5th 323, 330 (*Grant*).)  In determining on appeal whether a fact was established by clear and convincing evidence, our question " 'is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it

highly probable that the fact was true.'" (*Gomez*, at p. 688, quoting *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.)

Here, the trial court incorrectly concluded that the People provided clear and convincing evidence that Hand's mental disorder did not motivate, cause, or contribute to her commission of the alleged offense. (See § 1001.36, subd. (b)(2).) The trial court reasoned that heroin "is not a drug that [Hand] uses, that she possessed the heroin to sell it" and "[s]he was trying to make some money because she was struggling financially."

This was error. Under section 1001.36, subdivision (b)(2), the court was required to presume that Hand's mental disorder *did* contribute to her decision to sell heroin *unless* clear and convincing evidence established the contrary. Indeed, Harris's evaluation indicated that Hand's drug addiction contributed to her financial problems.[3] The People introduced no evidence— much less clear and convincing evidence—that it did not. Both the statutory presumption and Harris's report were unrebutted. (See *Harlow, supra*, 113 Cal.App.5th at p. 492; see also *Grant, supra*, 57 Cal.App.5th at p. 330.)

In *Harlow*, the court of appeal considered the People's argument that the alleged offense in that case—an assault—was caused by hostility between the defendant and the victim, rather than the defendant's depressive disorder, post traumatic stress disorder, and anxiety disorder. (*Harlow, supra*, 113 Cal.App.5th

---

[3] And as Hand asserts, it is "common knowledge . . . that drug users often turn to dealing drugs to finance their habits." (*United States v. Campos* (8th Cir. 2002) 306 F.3d 577, 582; see also, e.g., Avi Brisman, *Meth Chic and the Tyranny of the Immediate: Reflections on the Culture-Drug/Drug-Crime Relationships* (2006) 82 N.D. L.Rev. 1273, 1335 ["Meth is initially inexpensive, '[b]ut after using it a while, [one] needs more to get the same effect . . . . At seven days a week, the cost of addiction stacks up quickly, leaving crime as the only alternative for funding the habit.'"].)

9

at pp. 490, 492.) *Harlow* rejected the argument because the prosecution offered no evidence to support a conclusion that hostility was inconsistent with the defendant's mental health conditions, and "no *evidence . . .* falls far short of clear and convincing evidence to rebut the statutory presumption." (*Id.* at p. 492 & fn. 4.; see also *Lacour v. Superior Court* (2025) 110 Cal.App.5th 391, 404 (*Lacour*).) Similarly here, no evidence in the record supported the trial court's assumption that a person suffering from amphetamine-stimulant use disorder will not be financially motivated to sell heroin. (See *Gomez, supra,* 113 Cal.App.5th at p. 687 [explaining that the trial court abuses its discretion if it " 'bases its decision on express or implied factual findings that are not supported by substantial evidence.' "])

Following our issuance of the order to show cause, the trial court responded that Harris's diagnoses were based "solely on the self-reporting of [Hand] 17 months after her arrest,"[4] reflecting the trial court's apparent skepticism of the diagnoses. Under section 1001.36, subdivision (b)(2), however, the defendant's eligibility for diversion no longer turns on the trial court's " ' "satisfaction," ' " as it had in an earlier, superseded version of the statute. (See *Harlow, supra,* 113 Cal.App.5th at p. 490; *Sarmiento, supra,* 98 Cal.App.5th at p. 891.) Instead, the statute requires the court to presume a diagnosis establishes a causal nexus so long as a diagnosis was made by a qualified expert within five years. (See *Harlow,* at pp. 490-491 [holding that the section 1001.36, subdivision (b)(2) presumption applied even though the defendant was not diagnosed until three years after the charged offense].) The presumption applies "[o]nce the

---

[4] The trial court's characterization of the bases for Harris's diagnoses was not accurate. As the evaluation report reflects, Harris's diagnoses were based not only on Hand's personal history and self-reporting, but also on Harris's examination of Hand and the police reports, which described Harris's statements and behavior at the time of arrest.

defendant produces a timely mental health diagnosis," as Hand has done. (*Harlow,* at p. 491.)[5]

In sum, the trial court incorrectly concluded that Hand was ineligible for diversion. (§ 1001.36, subd. (b)(2).) To qualify for diversion, however, Hand must also establish her suitability (§ 1001.36, subds. (a), (c)), a question the trial court did not reach and so is not before us. As a result, we will vacate the trial court's order denying diversion and direct the court to hold

_____

[5] The trial court's response to our order to show cause also observed that the police reports did not expressly note signs that Hand was under the influence of drugs at the time of her arrest and, in the court's view, there was "no evidence that [Hand] had recently used or was under the influence of methamphetamine at the time of her arrest." Assuming the trial court's characterization of the record is accurate, the absence of evidence does not constitute substantial evidence in support of the court's finding that the prosecution provided clear and convincing evidence negating any causal link between Hand's mental health condition and the alleged offense. (See *Harlow, supra,* 113 Cal.App.5th at p. 492; *Lacour, supra,* 110 Cal.App.5th at pp. 403-404.) *Lacour* held, for example, that the fact that the police reports did not affirmatively state that the defendant was suffering mental health symptoms, or that the defendant did not report mental health symptoms to the police, did not amount to substantial evidence in support of the trial court's ineligibility determination. (*Lacour*, at pp. 403-404.) Further, the trial court here ignored the evidence in the record that Hand had a methamphetamine smoking pipe on her person when she was arrested, which is consistent with the conclusion that she was an active methamphetamine user at the time. It is also notable that Hand was quite garrulous at the time of her arrest, both before and after receiving a *Miranda* warning, and she repeatedly and "spontaneously" volunteered incriminating information in a context in which it would have been in her legal interest to remain silent. As Harris's report explained, the use of methamphetamines "increases poor judgment" and "poor impulse control."

11

further proceedings to determine Hand's suitability.  (See § 1001.36, subd. (c).)

## C.

Finally, we decline Hand's invitation to disqualify the trial court judge.

We must exercise our power to disqualify a judge under Code of Civil Procedure section 170.1, subdivision (c), "sparingly, and only when the interests of justice require it." (*People v. LaBlanc* (2015) 238 Cal.App.4th 1059, 1078-1079; see also *In re Tuilaepa* (2025) 108 Cal.App.5th 1262, 1283.)  Hand argues that based on the trial court's erroneous assessment of the evidence, application of the case law, and conduct of the proceedings, a reasonable person would have doubts as to the trial court's impartiality.  (See Code Civ. Proc., § 170.1, subd. (a)(6)(A)(iii).)  But the trial court's "[m]ere . . . error does not establish bias" and does not justify disqualification under the circumstances here.  (*LaBlanc*, at p. 1079; *Tuilaepa*, at p. 1283.)

## DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its order denying the application for mental health diversion and to issue a new and different order stating that the petitioner is eligible for diversion and scheduling further proceedings and a hearing to consider the petitioner's suitability for diversion in accordance with this opinion.  The petition is denied as to the trial court's order denying the petitioner's challenge under Code of Civil Procedure section 170.6.  Our decision shall be final in this court upon filing and the stay shall dissolve at that time.  (See Cal. Rules of Court, rule 8.490(b)(2)(A).)

BURNS, J.

WE CONCUR:

JACKSON, P. J.
SIMONS, J.

*Hand v. Superior Court* (A173974)